1

2

3

4

5

6                 IN THE UNITED STATES DISTRICT COURT FOR THE

7                        EASTERN DISTRICT OF CALIFORNIA

8

9  STANLEY BRADFORD CLARKE,      )        No. CV-F-07-888 OWW/SMS
                                 )
10                               )        MEMORANDUM DECISION AND
                                 )        ORDER GRANTING DEFENDANTS'
11                  Plaintiff,   )        MOTION TO STRIKE AND
                                 )        GRANTING IN PART WITH LEAVE
12           vs.                 )        TO AMEND, GRANTING IN PART
                                 )        WITHOUT LEAVE TO AMEND,
13                               )        DENYING IN PART, AND
   SANDRA UPTON, et al.,         )        DEFERRING IN PART
14                               )        DEFENDANT'S MOTION TO
                                 )        DISMISS THE FOURTH AMENDED
15                  Defendants.  )        COMPLAINT (Doc. 24)
                                 )
16 _____)

17

18

19        Stanley Bradford Clarke, proceeding *in pro per*, filed a

20 Fourth Amended Complaint (FAC) pursuant to Order filed on October

21 18, 2007.[1]  Defendants are Sandra Upton, employed as a social

22 worker with the Madera County Department of Social Services;

23 Amparo Williams, employed as a social worker for the Madera

24 _____

25        [1]Plaintiff commenced this action in the Madera County Superior
   Court.  Defendants removed Plaintiff's Third Amended Complaint to
26 this Court.  Plaintiff's Third Amended Complaint was dismissed with
   leave to amend by the October 18, 2007 Order.

                                    1

County Department of Social Services; the Madera County Department of Social Services; the County of Madera; and Does 3-50.  The FAC "sues each defendant, except the entity defendants, in both their individual and official capacities."

The First Cause of Action is for violation of 42 U.S.C. § 1983 and seeks "damages against defendants for committing acts, under color of law, which deprived plaintiff of rights secured under the Constitution and laws of the United States; for conspiring for the purpose of impeding and hindering the due course of justice, with intent to deny plaintiff equal protection of laws; and for refusing or neglecting to prevent such deprivations and denials to plaintiff."   The First Cause of Action alleges:

> 11.  Plaintiff is informed and believes and alleges that defendants, and each of them, negligently and/or intentionally falsified and/or misrepresented evidence in juvenile dependency proceedings involving the placement of plaintiff's minor child (hereinafter 'A'), resulting in plaintiff's loss of custody, loss of visitation rights, and other rights protected the United States Constitution and the Fourth and Fourteenth Amendments, including plaintiff's fundamental right to participate in the parenting and raising of his son.
>
> 12.  Plaintiff is informed and believes that, in taking the action herein alleged, defendants, and each of them, were motivated by racial and/or gender bias based on plaintiff's American Indian ancestry and/or plaintiff's male gender.
>
> 13.  Plaintiff is informed and believes that, in taking the action herein alleged, defendants, and each of them, were not acting in a prosecutorial or quasi-prosecutorial

capacity, but were instead acting in an investigative, ministerial or some other non-prosecutorial and non-quasi-prosecutorial capacity to ensure that plaintiff's son A was placed with plaintiff's former spouse rather than with A [sic], based on racial and/or gender bias as alleged herein.

14.   As a legal result of defendants' actions, plaintiff has suffered injury, loss and/or damage in that plaintiff lost custody and visitation rights with his son A, plaintiff lost the right to make decisions and participate in decisions regarding the raising of his son A, and plaintiff's fundamental liberty interest in raising his son and in maintaining a family and parent relationship with his son was lost and/or interfered with.

The Second Cause of Action is for violation of Section 1983 and alleges:

19.   Plaintiff is informed and believes that, in taking the action [sic] herein alleged, defendants, and each of them, acted in order to assure that plaintiff's son A would be removed from plaintiff's custody and placed in the custody of plaintiff's former spouse, based on defendants [sic] racial and/or gender bias as herein alleged.

20.   Plaintiff is informed and believes that defendants, in taking this action, knew or should have known that, as a result, plaintiff's son A would be subjected to sexual abuse, and that defendants thereby failed to protect plaintiff's son and violated plaintiff's rights.

21.   Defendants ... affirmatively placed plaintiff's son A in danger, and created or exposed plaintiff's son A to a danger which he would not otherwise have faced, and thereby deprived him of a substantive due process right in violation of his rights under the United States Constitution and the Fourteenth Amendment.

22.   Defendants, by taking plaintiff's son

3

into state custody and their other actions as alleged herein, entered into a special relationship with plaintiff and plaintiff's son A, such that defendants were required to act with care regarding plaintiff and plaintiff's son A.  By their actions as herein alleged, defendants violated their duties incident to the special relationship they had created, and thereby deprived him of a substantive due process right in violation of his rights under the United States Constitution and the Fourteenth Amendment.

23.  Plaintiff is informed and believes that, in taking the action [sic] herein alleged, defendants, and each of them, were not acting in a prosecutorial or quasi-prosecutorial capacity, but were instead acting in an investigative or ministerial capacity to ensure that plaintiff's son A was placed with plaintiff's former spouse rather than with A, based on racial and/or gender bias.

The Third Cause of Action [mistakenly captioned the First Cause of Action in the FAC) is for violation of Section 1983 and alleges:

29.  On or about , [sic] plaintiff was charged with kidnapping and/or child abduction and/or other criminal charges arising from an allege [sic] violation of custody and/or visitation orders concerning plaintiff's son A.

30.  As a result of those charges, plaintiff's custody and/or visitation rights concerning his son A were terminated and/or curtailed for a substantial period of time, plaintiff suffered the loss of his fundamental right to participate in the raising and parenting of A, and otherwise suffered a loss of rights protected under the United States Constitution and the Fourteenth Amendment.

31.  Plaintiff is informed and believes and alleges that defendants, and each of them, knew at all times relevant to this dispute that plaintiff had not kidnaped his son A,

4

had not violated any court-issued custody or visitation orders regarding his son A, and that plaintiff had at all times acted upon instructions given to him by officers and detectives of the Madera Police Department.

32.  Plaintiff is further informed that defendants, and each of them, had an obligation to reveal to the court, the prosecutors and other officials their knowledge regarding plaintiff's actions as herein set out and that, had defendants done so, plaintiff would not have suffered the losses alleged herein.

33.  Plaintiff is informed and believes that, in taking the action [sic] alleged herein, defendants ... were motivated by racial and/or gender bias based on plaintiff's American Indian ancestry and/or plaintiff's male gender.

34.  Plaintiff is informed and believes that, in taking the action herein alleged, defendants, and each of them, were not acting in a prosecutorial or quasi-prosecutorial capacity, but were instead acting in an investigative, ministerial or some other non-prosecutorial and non-quasi-prosecutorial capacity to ensure that plaintiff's son A was placed with plaintiff's former spouse rather than with A [sic], based on racial and/or gender bias as alleged herein.

The Fourth Cause of Action is for intentional infliction of emotional distress and also alleges that "the individual defendants' conduct ... constituted perjury and/or fabrication of evidence and/or a failure to disclose known exculpatory evidence and/or obtaining testimony by duress, all as more fully set out in Section 820.21 of the California Government Code."[2]

---

[2]California Government Code § 820.21 provides:

(a) Notwithstanding any other provisions of the law, the civil immunity of juvenile court social workers, child protection workers, and other public employees authorized to initiate

5

The Fifth Cause of Action is for negligent infliction of emotional distress and repeats the quoted allegation in the Fourth Cause of Action regarding Section 820.21 of the California Government Code.

The FAC prays for "general damages for mental and emotional distress," for medical and related expenses; for compensatory damages for violations of Plaintiff's federal civil rights; for punitive damages; and for reasonable attorney's fees pursuant to 42 U.S.C. § 1988.

Defendants move to dismiss and to strike the FAC.

A.   <u>MOTION TO STRIKE</u>.

Defendants County of Madera and County of Madera Department

---

or conduct investigations or proceedings pursuant to Chapter 2 (commencing with Section 200) of Part 1 of Division 2 of the Welfare and Institutions Code shall not extend to any of the following, if committed with malice:

(1) Perjury.
(2) Fabrication of evidence.
(3) Failure to disclose known exculpatory evidence.
(4) Obtaining testimony by duress, as defined in Section 1569 of the Civil Code, fraud, as defined in either Section 1572 or Section 1573 of the Civil Code, or undue influence, as defined in Section 1575 of the Civil Code.

(b) As used in this section, 'malice' means conduct that is intended by the person described in subdivision (a) to cause injury to the plaintiff or despicable conduct that is carried on by the person described in subdivision (a) with a willful and conscious disregard of the rights or safety of others.

6

of Social Services move to strike the prayer for punitive damages against them.

Defendants' motion to strike is GRANTED. *See City of Newport v. Fact Concerts*, 453 U.S. 247 (1981); California Government Code § 818.

Defendants move to strike the prayer for attorney's fees pursuant to Section 1988.

A pro se litigant is not entitled to an award of attorneys' fees under Section 1988. *Kay v. Ehrler*, 499 U.S. 432, 435 (1991); *Elwood v. Drescher*, 456 F.3d 943, 946-948 (9th Cir.2006).

Plaintiff asserts that the prayer for attorney's fees "is to recover the amount of lost wages due to Plaintiff's pro se representation, and to recover the costs of retaining counsel in this action, when Plaintiff is able to afford to do so."

Defendants' motion to strike the prayer for attorney's fees is GRANTED. Plaintiff cannot recover lost wages in the form of attorney's fees. Plaintiff is not entitled to any award for attorney's fees under Section 1988. If and when Plaintiff retains counsel to represent him in this action, Plaintiff's counsel can seek attorney's fees under Section 1988.

B. <u>MOTION TO DISMISS</u>.

1. <u>Governing Standards</u>.

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. *Novarro v. Black*, 250 F.3d 729, 732 (9th Cir.2001). Dismissal of a claim under Rule 12(b)(6) is appropriate only where "it appears beyond doubt that the

7

plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Dismissal is warranted under Rule 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir.1984). In reviewing a motion to dismiss under Rule 12(b)(6), the court must assume the truth of all factual allegations and must construe all inferences from them in the light most favorable to the nonmoving party. *Thompson v. Davis*, 295 F.3d 890, 895 (9th Cir.2002). The court must construe a *pro se* plaintiff's pleadings liberally in determining whether a claim has been stated. *Ortez v. Washington County, State of Or.*, 88 F.3d 804, 807 (9th Cir. 1996); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). However, legal conclusions need not be taken as true merely because they are cast in the form of factual allegations. *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir.2003). Immunities and other affirmative defenses may be upheld on a motion to dismiss only when they are established on the face of the complaint. *See Morley v. Walker*, 175 F.3d 756, 759 (9th Cir.1999); *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980) When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of

1   which the court takes judicial notice.  *Parrino v. FHP, Inc*, 146

2   F.3d 699, 705-706 (9th Cir.1988).

3      2.   <u>Duty to Protect Plaintiff and Plaintiff's Son</u>.

4     Defendants move to dismiss Plaintiff's claims that they

5   violated Plaintiff's constitutional rights by failing to protect

6   Plaintiff and Plaintiff's son from Plaintiff's ex-wife.

7     Defendants, citing *DeShaney v. Winnebago County Dep't of*

8   *Social Services*, 489 U.S. 189 (1989), argue that these

9   allegations and claims based on them should be dismissed because

10  Defendants had no constitutional duty to protect the Plaintiff or

11  his child from the mother.

12    In *DeShaney*, the mother of a child who had been beaten by

13  the father brought a civil rights action against social workers

14  and local officials who had received complaints that the child

15  was being abused by his father but had not removed him from his

16  father's custody.  The Supreme Court held that the State had no

17  constitutional duty to protect the child from his father after

18  receiving reports of possible abuse.  The Supreme Court held that

19  "a State's failure to protect an individual against private

20  violence simply does not constitute a violation of the Due

21  Process Clause."  489 U.S. at 197.  The Supreme Court reasoned:

22      [N]othing in the language of the Due Process
        Clause itself requires the State to protect
23      the life, liberty, and property of its
        citizens against invasion by private actors.
24      The Clause is phrased as a limitation on the
        State's power to act, not as a guarantee of
25      certain minimal levels of safety and
        security.  It forbids the State itself to
26      deprive individuals of life, liberty, or

1     property without 'due process of law,' but
2     its language cannot fairly be extended to
      impose an affirmative obligation on the State
3     to ensure that those interests do not come to
      harm through other means.

4  *Id.* at 195.  As explained in *Johnson v. City of Seattle*, 474 F.3d

5  634 (9th Cir.2007):

6        The general rule announced in *DeShaney* that
         members of the public have no constitutional
7        right to sue state actors who fail to protect
         them from harm inflicted by third parties 'is
8        modified by two exceptions: (1) the "special
         relationship" exception; and (2) the "danger
9        created exception."

10 The special relationship exception arises when the government

11 enters into a special relationship with a party, such as taking

12 the party into custody or placing him into involuntary

13 hospitalization.  The danger created exception arises when

14 affirmative conduct on the part of the state places a party in

15 danger he otherwise would not have been in.  *L.W. v. Grubbs*, 974

16 F.2d 119, 121 (9th Cir.1992), *cert. denied*, 508 U.S. 951 (1993).

17 As explained in *Huffman v. County of Los Angeles*, 147 F.3d 1054,

18 1061 (9th Cir.1998):

19        The danger-created exception to *DeShaney* does
          not create a broad rule that makes state
20        officials liable under the Fourteenth
          Amendment whenever they increase the risk of
21        some harm to members of the public.  Rather,
          the danger-creation plaintiff must
22        demonstrate, at the very least, that the
          state acted affirmatively ... and with
23        deliberate indifference ... in creating a
          foreseeable danger to the plaintiff ...,
24        leading to the deprivation of the plaintiff's
          constitutional rights ....
25
26    Plaintiff asserts that Defendants "entered into a Court

1   ordered case plan and duty to protect the best interest and

2   welfare of Plaintiff's minor child, as a dependent of the

3   juvenile court under state control."   Plaintiff argues that

4   *DeShaney* is distinguishable:

5            In *DeShaney*, the child custody order was from
             Wyoming, and the custodial parent and child
6            had moved to Winnebago County, Wisconsin,
             where the injuries took place.   Winnebago
7            County, Wisconsin, Department of Social
             Services had not created a duty to oversee
8            and supervise the placement of best interest
             of the DeShaney child.   Here in Plaintiff's
9            case, the Defendants were directly involved
             in the placement and supervision of
10           Plaintiff's minor child and could have
             petitioned the court upon a change in
11           circumstances due to new allegations of child
             abuse, and placed the dependent minor child
12           in protective custody, in Plaintiff's
             custody, or in other foster care, pending
13           further court proceedings, without
             terminating any parental rights, and thereby
14           protecting the best interests and welfare of
             Plaintiff's minor child.   Defendants failed
15           to do so.

16       Plaintiff cites no authority that his purported distinction

17  from *DeShaney* is valid.

18       Plaintiff cites *Norfleet by and Through Norfleet v. Arkansas*

19  *Dept. of Human Services*, 989 F.2d 289 (8th Cir.1993).   In

20  *Norfleet*, the mother of an asthmatic child who died in the care

21  of foster parents brought a Section 1983 action against the

22  Arkansas Department of Human Services and its employees.   The

23  District Court's denial of Defendants' motion for summary

24  judgment on the basis of qualified immunity was affirmed by the

25  Eighth Circuit:

26           *DeShaney* left open the possibility that due

                                    11

process might be implicated in a foster care situation.  The Court noted:

> Had the State by the affirmative exercise of its power removed Joshua from free society and placed him in a foster home operated by its agents, we might have a situation sufficiently analogous to incarceration or institutionalization to give rise of an affirmative duty to protect.

*DeShaney*, 489 U.S. at 201 n. 9 ....

Several circuits have interpreted the scope of due process rights of individuals under state care, and in particular, the rights of children in foster care.  The Second Circuit was the first circuit to address this issue in *Doe v. New York City Dept. of Social Servs.*, 649 F.2d 134 (2nd Cir.1981), after remand, 709 F.2d 782, *cert. denied sub. nom. Catholic Home Bureau v. Doe*, 464 U.S. 864 ... (1983).  In *Doe*, a foster child sued her legal custodian and a child welfare agency in New York alleging that state officials violated her constitutional rights when they failed to investigate alleged sexual abuse of her foster father.  The court held that government officials may be liable under § 1983 for failure to act when the duty to act exists.  'When individuals are placed in the custody or under the care of the government, their governmental custodians are sometimes charged with affirmative duties, the nonfeasance of which may violate the constitution.'  *Id.* at 141.  Similarly, the Eleventh Circuit has determined that a foster child involuntarily placed in a foster home has similar rights as a prisoner involuntarily placed in a penal institution.  *Taylor ex rel. Walker v. Ledbetter*, 818 F.2d 791 (11th Cir.1987) (en banc), *cert. denied*, 489 U.S. 1065 ... (1989) ... When the Sixth Circuit considered a § 1983 action filed by a child that was sexually abused in foster care, the court relied on *Taylor* and *Doe* in holding that 'due process extends the right to be free from the infliction of unnecessary harm to children in state-regulated foster

homes."   *Meador v. Cabinet for Human
Resources*, 902 F.2d 474, 476 (6th Cir.),
*cert. denied*, 498 U.S. 867 ... (1990).
Finally, in *Morgan,* the Seventh Circuit
addressed whether a child in state custody
has a right not be to placed with a foster
parent whom the state knew or suspected to be
a child abuser.  The court held that '[o]nce
the state assumes custody of a person, it
owes him a rudimentary duty of safekeeping no
matter how perilous his circumstances when he
was free.'  914 F.2d at 849.

...

We ... conclude that, in light of the case
law existing at the time of this tragic
incident, combined with the undeniable nature
of the state's relationship with and
corresponding obligations to Taureen, it was
clearly established in 1991 that the state
had an obligation to provide adequate medical
care, protection and supervision.

989 F.2d at 292-293.

This line of cases does not assist Plaintiff in avoiding
dismissal of the FAC on this ground - there is no allegation in
the FAC that his minor son was placed in foster care.[3]  At the
hearing, Plaintiff asserted that his son's mother was convicted
of child abuse, which caused the removal of the minor from his
mother's custody and his placement in foster care are for five
months.  Plaintiff asserted that the minor was then returned to
the custody of both parents for a short period of time, and then

_____

[3]Plaintiff also cited *Stoneking v. Bradford Area Sch. Dist.,*
882 F.2d 720, 725 (3rd Cir.1989), *cert. denied sub. nom Smith v.
Stoneking*, 493 U.S. 1044 (1990).  *Stoneking* is not followed by the
Ninth Circuit.  *See Plumeau v. Yamhill County School Dist. No. 40*
907 F.Supp. 1423, 1445 (D.Or.1995), *aff'd,* 130 F.3d 432 (9th
Cir.1997).  Plaintiff also cited *Fox v. Castle*, 712 F.2d 84 (4th
Cir.1983).  *Fox* predates *DeShaney* and for that reason is not
authoritative.

the minor was placed in his mother's custody again.  Plaintiff asserted that additional allegations of child abuse against the mother were made by the police which Defendants Upton and Williams failed to investigate.  Plaintiff claimed that, after the mother was found guilty of one case of child abuse, the minor was returned to the joint custody of both parents, which would not have occurred if the father had previously been convicted of child abuse.  Plaintiff contended that all of these allegations were set forth in the Third Amended Complaint.

The Third Amended Complaint was 101 pages long and contained 268 pages of allegations.  The Third Amended Complaint was dismissed with leave to amend because of Plaintiff's failure to comply with Rule 8(a)(2), Federal Rules of Civil Procedure, and because it was confusing, unnecessarily verbose and repetitive.  Rule 15-220, Local Rules of Practice, provides in pertinent part:

> Unless prior approval to the contrary is obtained from the Court, every pleading to which an amendment ... has been allowed by Court order shall be retyped and filed so that it is complete in itself without reference to the prior or superseded pleading.  No pleading shall be deemed supplemented until this Rule has been complied with.  All changed pleadings shall contain copies of all exhibits referred to in the changed pleading.

Plaintiff cannot rely on the allegations of the Third Amended Complaint to state a claim for relief in the Fourth Amended Complaint.

Given Plaintiff's assertions at the hearing, leave to amend will be granted.  Plaintiff must clearly and succinctly allege

14

the facts, including where appropriate, dates, upon which he
intends to rely in asserting that either of the exceptions to
*DeShaney* apply.  Plaintiff is advised, however, that the
allegations of the FAC and his assertions at the hearing do not
permit an inference that *Plaintiff* was placed in any danger by
the County or any of the other Defendants or that any "special
relationship" existed between *Plaintiff* and the Defendants.
Rather, Plaintiff's complaint appears to be that his *minor son*
was endangered when he was placed in the custody of his mother by
Court order without adequate investigation by Defendants of
allegations of child abuse by the mother.  Plaintiff's son is not
a party to this action.  Plaintiff cannot assert the alleged
violations of his son's constitutional rights on his son's
behalf; only his son can do that.  *See Johns v. County of San
Diego*, 114 F.3d 874, 876 (9th Cir.1997) ("[C]onstitutional claims
are personal and cannot be asserted vicariously.").  Because of
this, Plaintiff's discussion in his opposition brief that a
child's removal by social workers violates the Fourth Amendment,
*see Wooley v. City of Baton Rouge*, 211 F.3d 913, 925 (5th
Cir.2000), is unavailing.  Plaintiff, who is presently proceeding
*in pro per*, cannot amend to name his son as a plaintiff.  "[A]
parent or guardian [ad litem] cannot bring an action on behalf of
a minor child without retaining a lawyer," even if the parent is
proceeding *in pro per*.  *Johns, id.* at 877.

3.   <u>Absolute Immunity of County Employees</u>.[4]

Defendants move to dismiss the First and Third Causes of Action on the ground of absolute immunity.

In *Meyers v. Contra Costa County Dept. of Soc. Serv.*, 812 F.2d 1154, 1157 (9th Cir.), *cert. denied*, 484 U.S. 829 (1987), the Ninth Circuit held:

> [S]ocial workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings.

*See also Doe v. Lebbos*, 348 F.3d 820, 826 (9th Cir.2003), *cert. denied,* 542 U.S. 904 (2004):

> The Does contend that Herrera both failed to investigate possible exculpatory evidence and fabricated evidence in the dependency petitions she submitted to the dependency court.  Herrera, however, engaged in these actions as part of her initiation and pursuit of child dependency proceedings – she filed a dependency petition in state court on November 4, 1999, and dependency proceedings were held on November 5, 1999.  Herrera's actions therefore had the 'requisite connection to the judicial process' to be protected by absolute immunity.  *Miller,* 335 F.3d at 896.
>
> Indeed, in *Meyers v. Contra Costa County Department of Social Services,* 812 F.2d 1154, 1157 (9th Cir.1987), we recognized that 'social workers are entitled to absolute immunity in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings.'  *See also Imbler*, 424 U.S. at 416, 431 & n.34 ... (holding that prosecutors are entitled to

---

[4]Defendants object that the FAC does not allege any dates on which the allegedly wrongful actions occurred, contending that absolute and qualified immunities cannot be determined without those dates.

16

> absolute immunity 'in initiating a
> prosecution and in presenting the State's
> case,' even where the prosecutor willfully
> used perjured testimony and willfully
> suppressed exculpatory information at trial);
> *Miller*, 335 F.3d at 898; *Mabe*, 237 F.3d at
> 1109 (holding, where there are allegations
> that social workers did not conduct their
> investigation properly and submitted false
> evidence during juvenile court proceedings,
> that the social workers were entitled to
> absolute immunity because their actions were
> part of the initiation and pursuit of
> dependency proceedings).

*See also Mabe v. San Bernardino County, Dept. of Soc. Serv.*, 237
F.3d 1101, 1109 (9th Cir.2001):

> Moreover, social workers 'enjoy absolute,
> quasi-judicial immunity when making post-
> adjudication custody decisions pursuant to a
> valid court order.' *Babcock v. Tyler*, 884
> F.2d 497, 503 (9th Cir.1989)(holding social
> workers entitled to absolute immunity from a
> claim that they erred in placing minor
> dependents in foster home where the minors
> were later sexually abused).

Relying on these cases, Defendants Upton and Williams assert
that they are entitled to absolute immunity from liability under
Section 1983 with regard to the allegations in the First and
Third Causes of Action that they improperly investigated
Plaintiff on suspicion of child abuse, brought false charges of
kidnapping against him, and provided false evidence against him
while withholding evidence that exonerated him.

Plaintiff responds that Defendants Upton and Williams are
not entitled to dismissal on the ground of absolute immunity:

> Defendants did not testify as witnesses, and
> as such, Plaintiff does not complain of
> Defendant's [sic] witness statements.
> Plaintiff complains of the ministerial and

17

investigative functions prior to any judicial
proceeding or probable cause to charge
Plaintiff.  Plaintiff complains of Defendants
conspiring to discriminate and injure
Plaintiff by fabricating evidence prior to
judicial proceedings to justify their removal
of Plaintiff's minor child.

Plaintiff cannot defeat Defendants' entitlement to absolute immunity by alleging conspiracy.  *See Ashelman v. Pope*, 793 F.2d 1072, 1078 (9th Cir.1986)(en banc).  Although it appears very likely that Defendants Upton and Williams are entitled to absolute immunity based on the cases cited above, there are factual issues to be resolved prior to making this determination as a matter of law.  In *Miller v. Gammie*, 335 F.3d 889 (9th Cir.2003)(en banc), the Ninth Circuit ruled that the District Court did not err in deferring ruling on a motion to dismiss on the ground of absolute immunity until completion of limited discovery on what functions defendants performed.

Defendants' motion to dismiss on the ground of absolute immunity is DEFERRED pending completion of limited discovery.

4.  <u>Qualified Immunity of County Employees</u>.

Defendants Upton and Williams move to dismiss the Section 1983 claims against them on the ground of qualified immunity.

Qualified immunity serves to shield government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  The Ninth Circuit employs a three-part test to determine whether an individual is entitled

18

to qualified immunity.  First, the specific right allegedly
violated must be identified.  Secondly, it must be determined
whether that right was so clearly established as to alert a
reasonable officer to its constitutional parameters.  Third, if
the law is clearly established, it must be determined whether a
reasonable officer could have believed lawful the particular
conduct at issue.  *Kelly v. Borg*, 60 F.3d 664, 666 (9th Cir.
1995).  The plaintiff in a Section 1983 action bears the burden
of proving that the right allegedly violated was clearly
established at the time of the officer's allegedly impermissible
conduct.  *Camarillo v. McCarthy*, 998 F.2d 638, 640 (9th Cir.
1993).  A law is "clearly established" when "the contours of that
right [are] sufficiently clear that a reasonable officer would
understand that what he is doing violates that right."  *Anderson
v. Creighton*, 489 U.S. 635, 640 (1987).  To demonstrate clearly
established law at the time of the events in question, the
plaintiff

> 'must show that <u>the particular facts</u> of [the]
> case support a claim of clearly established
> right.' ... This does not mean that the
> 'exact factual situation' of [the case] must
> have been previously litigated ...
> '[S]pecific binding precedent is not required
> to show that a right is clearly established
> for qualified immunity purposes.' ... Absent
> binding precedent, 'a court should look at
> all available decisional law including
> decisions of state courts, other circuits,
> and district courts to determine whether the
> right was clearly established.' ...
> Nonetheless, '[t]he contours of the [clearly
> established] right must be sufficiently clear
> that a reasonable official would understand
> that what he is doing violates that right.'

19

1            . . . .

2  *Doe By and Through Doe v. Petaluma City School Dist.*, 54 F.3d

3  1447, 1450 (9th Cir. 1995).  The Supreme Court has set forth a

4  two-pronged inquiry to resolve all qualified immunity claims.

5  First, "taken in the light most favorable to the party asserting

6  the injury, do the facts alleged show the officers' conduct

7  violated a constitutional right?"  *Saucier v. Katz*, 533 U.S. 194,

8  201 (2001).  If the court determines that the conduct did not

9  violate a constitutional right, the inquiry is over and the

10 officer is entitled to qualified immunity.  However, if the court

11 determines that the conduct did violate a constitutional right,

12 *Saucier*'s second prong requires the court to determine whether,

13 at the time of the violation, the constitutional right was

14 "clearly established."  *Id*.  "The relevant, dispositive inquiry

15 in determining whether a right is clearly established is whether

16 it would be clear to a reasonable officer that his conduct was

17 unlawful in the situation he confronted."  *Id*. at 202.  This

18 inquiry is wholly objective and is undertaken in light of the

19 specific factual circumstances of the case.  *Id*. at 201.  Even

20 if the violated right is clearly established, *Saucier* recognized

21 that, in certain situations, it may be difficult for a police

22 officer to determine how to apply the relevant legal doctrine to

23 the particular circumstances he faces.  If an officer makes a

24 mistake in applying the relevant legal doctrine, he is not

25 precluded from claiming qualified immunity so long as the mistake

26 is reasonable.  If "the officer's mistake as to what the law

requires is reasonable, ... the officer is entitled to the

immunity defense." *Id.* at 205.  In *Brosseau v. Haugan*, 543 U.S.

194 (2004), the Supreme Court reiterated:

> Qualified immunity shields an officer from
> suit when she makes a decision that, even if
> constitutionally deficient, reasonably
> misapprehends the law governing the
> circumstances she confronted. *Saucier v.
> Katz*, 533 U.S., at 206 (qualified immunity
> operates 'to protect officers from the
> sometimes "hazy border between excessive and
> acceptable force"').  Because the focus is on
> whether the officer had fair notice that her
> conduct was unlawful, reasonableness is
> judged against the backdrop of the law at the
> time of the conduct.  If the law at that time
> did not clearly establish that the officer's
> conduct would violate the Constitution, the
> officer should not be subject to liability
> or, indeed, even the burdens of litigation.
>
> It is important to emphasize that this
> inquiry 'must be undertaken in light of the
> specific context of the case, not as a broad
> general proposition.'  *Id.*, at 201.  As we
> previously said in this very context:
>
> > '[T]here is no doubt that *Graham v.
> > Connor, supra*, clearly establishes
> > the general proposition that use of
> > force is contrary to the Fourth
> > Amendment if it is excessive under
> > objective standards of
> > reasonableness.  Yet, that is not
> > enough.  Rather, we emphasized in
> > *Anderson* [*v. Creighton*] "that the
> > right the official is alleged to
> > have violated must have been
> > 'clearly established' in a more
> > particularized, and hence more
> > relevant, sense: The contours of
> > the right must be sufficiently
> > clear that a reasonable officer
> > would understand that what he is
> > doing violates that right.' ...
> > The relevant, dispositive inquiry
> > in determining whether a right is
> > clearly established is whether it

1
2
3

            would be clear to a reasonable
officer that his conduct was
unlawful in the situation he
confronted.'  ...

4
5
6
7
8
9
10

            The Court of Appeals acknowledged this
statement of law, but then proceeded to find
fair warning in the general tests set out in
*Graham* and *Garner* ... In so doing, it was
mistaken.  *Graham* and *Garner,* following the
lead of the Fourth Amendment's text, are cast
at a high level of generality.  See *Graham v.
Connor*, *supra*, at 396 ('"[T]he test of
reasonableness under the Fourth Amendment is
not capable of precise definition or
mechanical application"').  Of course, in an
obvious case, these standards can 'clearly
establish' the answer, even without a body of
relevant case law.'

11 543 U.S. at 198-199.

12     Defendants acknowledge that parenthood is a fundamental

13 constitutional right that cannot be interfered with by the

14 government without due process of law.

15     In *Caldwell v. LeFaver*, 928 F.2d 331 (9th Cir.1991), a

16 father, whose children were removed from his home by social

17 workers and set out of state to the mother, with whom the father

18 shared joint custody, brought a Section 1983 action against

19 county social workers.  The Ninth Circuit ruled:

20
21
22
23
24
25
26

            It is clear that a parent has a
constitutionally protected interest in the
custody and care of his children ... However,
it is also clear that this interest is not
absolute.  In an emergency situation, a state
agency may remove children from their
parents' custody when the children are
subject to immediate or apparent harm or
danger ... This case does not present a
situation in which social workers interfered
with the parent-child relationship in the
absence of any perceived emergency.  *Compare
In re Juvenile Appeal*, 189 Conn. 275, 455

A.2d 1313 (1983).

Caldwell asserts that he had a right to a post-deprivation hearing in Montana to determine whether an emergency justified transporting the children to their mother in Washington, who shared legal custody.  There are some decisions recognizing that a parent may have a cognizable due process right to a post-deprivation hearing when the state removes a child from the parent's custody on an emergency basis and places the child with an individual who does not enjoy legal custody ... However, assuming such a right was clearly established in April 1987, we do not think that it vitiates the application of qualified immunity here.  This is because Caldwell's children were not placed with a person who lacked legal custody rights.  Indeed, there is no dispute that the policy being followed by Farnsworth and Francetich was one limited to situations in which the receiving parent had joint custody.  Moreover, defendants aptly point out that the decision as to whether the best interests of the children lay in continuing custody with their father may be best left in the hands of the Washington court, which issued the custody decree.  Generally, once a court takes jurisdiction over children and enters a custody decree, that court retains jurisdiction over custody issues that arise after the children leave that jurisdiction ....

It is also important to note that the policy action taken by defendants in this case has at least some support in a state statute.

928 F.2d at 333-334.

Defendants argue that Plaintiff alleges that he was charged with kidnapping and other criminal charges, which provided justification for the removal of Plaintiff's son from his custody.  Defendants assert that Plaintiff does not allege the he was deprived of any opportunity to challenge the Department of

23

1  Social Services in court, but in fact admits that juvenile

2  dependency proceedings did occur.

3      Plaintiff contends that Defendants Upton and Williams are

4  not entitled to dismissal of the Section 1983 claims against them

5  on the ground of qualified immunity:

6          Defendants did not make an emergency removal
           of Plaintiff's child based upon any evidence
7          of immediate danger or harm by Plaintiff.  On
           the contrary, Law [sic] enforcement officers
8          had found that Plaintiff's minor child had
           been abused by Plaintiff's ex-spouse, and had
9          instructed Plaintiff not to return the minor
           child until an investigation was completed.
10         Defendants acted in complete contradiction to
           the evidence and police report, and four days
11         later, removed Plaintiff's minor child from
           the custody and care of Plaintiff, before an
12         investigation was completed, affording
           Defendants time to deliberate their actions.
13         Plaintiff did not receive a prompt
           opportunity to challenge Defendants until
14         almost one month later, at which time an
           evidentiary hearing was postponed several
15         times until six months later in the following
           year.  During that time, Plaintiff was denied
16         all visitation for over one month, then
           relegated to one hour paid [sic] supervised
17         visits for almost one year.  Plaintiff has
           previously plead all of the times, dates,
18         names and places of these acts and
           occurrences.  The extended amount of time
19         that Plaintiff and Plaintiff's minor child
           were deprived of a familial relationship was
20         unreasonable, cruel, and an unusual
           punishment based upon the facts, evidence,
21         and eventual outcome of the underlying
           juvenile proceeding, and in direct violation
22         of Family Code 3027.5.

23              ...

24         In this instant case, this Plaintiff can
           attest that he waited 27 days for the first
25         hearing, but was not allowed to present
           evidence or cross examine witnesses for seven
26         full months after the deprivation.

                        24

Plaintiff cites *Whisman Through Whisman v. Rinehart*, 119 F.3d 1303, 1310-1311 (8th Cir.1997). In *Whisman*, a minor, his mother, and grandparents brought a Section 1983 action against juvenile officers and social workers, alleging that defendants' conduct in failing to investigate before taking the minor into custody, and in delaying a post-deprivation hearing, violated plaintiffs' constitutional rights of familial association, denying plaintiffs' due process of law. The Eighth Circuit affirmed the denial of defendants' motion to dismiss on the ground of qualified immunity:

> Even if defendants had a right to take temporary custody of Joel, defendants had a corresponding obligation to afford Michelle and Joel an adequate post-deprivation hearing. *Doe v. Hennepin County*, 858 F.2d 1325, 1329 (8th Cir.1998). The right to an adequate post-deprivation hearing was clearly established in February of 1995. Defendants scheduled the hearing for March 15, 1995, nearly a month after taking Joel into custody. Further, defendants objected to an earlier hearing, claiming administrative inconvenience. Michelle's and Joel's first opportunity for a due process hearing was seventeen days after Joel was taken into custody. Under the facts of this case, seventeen days was not a prompt hearing.

> Defendants contend that plaintiffs could have obtained a lawyer and availed themselves of certain procedural remedies at an earlier time, thus satisfying their right to due process. We cannot accept this contention. There may be some analogy in observing that any person whose clear constitutional rights are violated has the right to later employ counsel. When the state deprives parents and children of their right to familial integrity, even in an emergency situation, without a due process hearing, the state has the burden to initiate prompt judicial

25

> proceedings to provide a post deprivation hearing.

119 F.3d at 1310-1311.

Defendants reply that they are entitled to qualified immunity:

> Plaintiff did have hearings on the issue of whether his son was abused; he did not automatically lose his custody and visitation rights.  In fact, the actions of Defendants, if true, would have caused Plaintiff to defend his rights in court, not to lose them altogether.  Plaintiff's claim that the delays in conducting the court hearings caused more damage to his rights also fails, because Plaintiff does not allege that the delays or failures to produce evidence were the fault of the County.  From what can be gleaned from the Fourth Amended Complaint and Plaintiff's opposition, the delays could have been the result of actions taken by Plaintiff's ex-spouse's counsel, Plaintiff's son's counsel, or the Superior Court judge, none of whom are parties to this case.

Pursuant to *Gammie*, Defendants' motion to dismiss on the ground of qualified immunity is DEFERRED pending limited discovery.

> 5.   <u>Failure to Plead Policy or Custom Under *Monell*.</u>

In Defendants' reply brief, they move to dismiss the federal civil rights causes of action against the County because of Plaintiff's failure to plead that the individual Defendants' actions or failures to act were done pursuant to a policy or custom of the County.

Local government entities and local government officials acting in their official capacity can be sued for monetary, declaratory, or injunctive relief, but only if the allegedly

26

unconstitutional actions took place pursuant to some "policy statement, ordinance, or decision officially adopted and promulgated by that body's officers...." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978).  Alternatively, if no formal policy exists, plaintiffs may point to "customs and usages" of the local government entity.  *Id.*  A local government entity cannot be held liable simply because it <u>employs</u> someone who has acted unlawfully.  *Id.* at 694.  *See also Haugen,* 351 F.3d at 393 ("Municipalities cannot be held liable under a traditional respondeat superior theory. Rather, they may be held liable only when "action pursuant to official municipal policy of some nature caused a constitutional tort.... [T]o establish municipal liability, a plaintiff must prove the existence of an unconstitutional municipal policy.").  It is well established in the Ninth Circuit that an allegation based on nothing more than a bare averment that the official's conduct conformed to official policy, custom or practice suffices to state a *Monell* claim under Section 1983.  *See Karim Panahi v. L.A. Police Dept.*, 839 F.2d 621, 624 (9th Cir. 1988); *Shah v. County of L.A.*, 797 F.2d 743, 747 (9th Cir. 1986); *Guillory v. County of Orange*, 731 F.2d 1379, 1382 (9th Cir. 1984).

At the hearing, Plaintiff referred to the allegation in paragraphs 10, 18, and 28 of the FAC: "At all times material to this complaint, defendants acted under color of the statutes, customs, ordinances and usages of the State of California, the County of Madera and the Department of Social Services."

1  Although conclusory, these allegations suffice in the Ninth

2  Circuit to allege liability of the County under Section 1983

3  pursuant to *Monell*.  Defendants' motion to dismiss on this ground

4  is DENIED.

5        6.  <u>State Immunities</u>.

6        Defendants move to dismiss the Fourth and Fifth Causes of

7  Action on the grounds of various state immunities.

8              a.  <u>Litigation Privilege under California Civil

9  Code § 47(b)</u>.

10       Defendants contend that Plaintiff's claims are that the

11 County's social workers made misleading statements about

12 Plaintiff in court and in communications with law enforcement

13 agencies.  Assuming the truth of Plaintiff's allegations,

14 Defendants argue that Plaintiff cannot proceed because of the

15 litigation privilege set forth in California Civil Code § 47(b).

16       Section 47(b) bars a civil action for damages based on

17 statements made in any judicial proceeding, in any official

18 proceeding authorized by law, or in the initiation or course of

19 any mandate-reviewable proceedings authorized by law.  The

20 litigation privilege provided in Section 47(b)  applies to any

21 communication (1) made in judicial or quasi-judicial proceedings;

22 (2) by litigants or other participants authorized by law; (3) to

23 achieve the objects of the litigation; and (4) that have some

24 connection or logical relation to the action.  *A.F. Brown Elec.*

25 *Contractor, Inc. v. Rhino Elec.*, 137 Cal.App.4th 1118, 1126

26 (2006).  Section 47(b) establishes an absolute privilege for such

                          28

statements and bars all tort causes of action based on them except a cause of action for malicious prosecution. *Hagberg v. California Federal Bank*, 32 Cal.4th 350, 360 (2004). "'Section 47 gives all persons the right to report crimes to the police, the local prosecutor or an appropriate regulatory agency, even if the report is made in bad faith.'" *Hagberg, id.* at 365. "'[A] communication concerning possible wrongdoing, made to an official governmental agency such as a local police department, and which communication is designed to prompt action by that entity is as much a part of an "official proceeding" as a communication made after an official investigation has commenced ... After all, '[t]he policy underlying the privilege is to assure utmost freedom of communication between citizens and public authorities whose responsibility it is to investigate and remedy wrongdoing.' ... The importance of providing to citizens free and open access to governmental agencies for the reporting of suspected criminal activity outweighs the occasional harm that might befall a defamed individual.  Thus the absolute privilege is essential."'" *Id.* at 364-365.  Section 47(b)'s absolute privilege applies to "communications intended to instigate official investigation into [suspected] wrongdoing."  *Id.* at 369.  Statements made to prompt an official investigation that may result in the initiation of judicial proceedings also fall within the privilege set forth in Section 47(b).  *Id.* at 361-36.

     Defendants argue that this authority compels dismissal based on the litigation privilege:

> [A]ll of the allegedly damaging statements were made by social workers in the course and context of initiating or maintaining the underlying juvenile dependency case involving Plaintiff's son, including the investigation of the alleged abuse or neglect, consultation with law enforcement, the preparation of reports, and the presentation of witness testimony.  The statements were made to achieve the underlying objectives of the litigation, namely, the investigation of alleged harm to Plaintiff's son and the taking of Plaintiff's son into protective care while the County's social workers investigated the clashing claims of Plaintiff and Plaintiff's ex-wife.

Plaintiff argues that dismissal of the Fourth and Fifth Causes of Action on this ground is not appropriate:

> Plaintiff does not allege injury due to statements made in any judicial proceeding. Plaintiff complains of Defendants' failure to present and or to disclose exculpatory evidence that was within their power, control, knowledge, and duty to provide in a judicial or official proceeding.  Plaintiff complains of Defendants' fraud, deceit, alteration and deliberately falsifying documentation and material evidence with a reckless and malicious intent to injure Plaintiff that was motivated by animus and discrimination.

At the hearing, Defendants asserted that California Government Code § 820.21 does not apply to negate the litigation privilege of Section 47(b).

In *Parkes v. County of San Diego*, 345 F.Supp.2d 1071 (S.D.Cal.2004), the District Court ruled that "allowing section 47 to protect social workers from suit in all instances would negate the purpose of section 820.21."  The District Court ruled:

> Upon the Court's inquiry at oral argument on the matter, counsel explained they were

> unaware of any case dealing with what effect,
> if any, section 820.21 has on the litigation
> privilege.  This Court's own research
> revealed no such case.  Plaintiffs argue that
> if section 47(b) was able to shield
> defendants from liability despite the
> language of section 820.21, it would render
> the section a nullity.  This Court finds
> Plaintiff's [sic] argument persuasive.  The
> language of section 820.21 includes
> 'notwithstanding any other provision of law'
> which makes it clear that section 47 cannot
> be interpreted without consideration of
> section 820.21.  Additionally, according to
> the legislative history, section 820.21 was
> enacted to resolve the lack of effective
> check on social workers power and absolute
> immunity.  A. 1355, 1995 Sess., at 2
> (Ca.1995).  The author of the bill recognized
> the need to protect children from harm caused
> by an individual acting under the authority
> of the state or county.  *Id*.  As such,
> allowing section 47 to protect social workers
> from suit in all instances would negate the
> purpose of section 820.21.  As discussed
> above, there is a genuine issue of material
> fact as to whether Defendants Calderon and
> Simoes failed to disclose to the court
> exculpatory evidence with malice.  Therefore,
> they are not entitled to summary judgment
> based on the section 47(b) litigation
> privilege.

*Id.* at 1085-1086.

The Court's research has located no reported authority other than *Parkes* addressing the effect of Section 820.21 on Section 47(b).  Given this authority and the express language in Section 820.21, dismissal of Plaintiff's state law claims on the basis of the litigation privilege is not appropriate; there are factual issues which must be resolved before the application of the litigation privilege can be determined.

Defendants' motion to dismiss on this ground is DENIED.

31

1          **b.   Immunity From Claims Based on Injury Caused by**

2 **Failing to Enforce the Laws with Regard to Investigating Child**

3 **Abuse**.

4          Defendants move to dismiss Plaintiff's claims that he

5 suffered emotional distress caused by the County's social

6 workers' actions in removing his son from his home.

7          California Government Code § 818.2 provides that "[a] public

8 entity is not liable for an injury caused by adopting or failing

9 to adopt an enactment or by failing to enforce any law."

10 California Government Code § 821 provides that "[a] public

11 employee is not liable for an injury caused by his adoption or

12 for failure to adopt an enactment or by his failure to enforce an

13 enactment.  In defining law enforcement for purposes of these

14 sections, California courts hold that "'to enforce a law normally

15 means to compel obedience to the law by actual force, such as

16 involuntary detention, arrest or punishment ....'" *Ronald S. v.*

17 *County of San Diego*, 16 Cal.App.4th 887, 896 (1993), quoting

18 *Clemente v. State of California*, 101 Cal.App.3d 374, 378 (1980).

19 *Ronald S.* held:

20                    Insofar as Ronald's claim of negligence
                    related to his release to his parents after
21                    the several police detentions, we believe
                    section 818.2 immunity would be applicable.
22                    Such release involved use of the County's
                    coercive power over Ronald and the Mundys,
23                    and hence the decision to return Ronald would
                    come, we believe, within the definition of
24                    'law enforcement.'

25 *Id*.

26          Defendants argue that Plaintiff's claims of injury resulting

from his son being removed for his home, placement in foster care, and then placement in the mother's home is subject to these immunities because of the use of the County's coercive power over Plaintiff and his son to remove the child and place him with persons other than Plaintiff, even if those persons are alleged or proven to be abusive.

Plaintiff responds that he "has not alleged injury due to Defendants' failing to enforce any law, but alleges that Defendants have violated existing laws, acted maliciously and or negligently, and conspired to obstruct the course of justice, thereby ... causing injury to Plaintiff."

Because of Government Code § 820.21 and Plaintiff's allegations, factual development will be necessary to determine whether or not the immunities in Government Code §§ 818.2 and 821 apply to Defendants.

Defendants' motion to dismiss on this ground is DENIED.

c. <u>Immunity From Liability Regarding Enforcement of Child Abuse Laws</u>.

Defendants argue that the County and its employees are immune from liability under California Government Code §§ 820.4 and 815.2(b) for injury allegedly caused by the employees' acts or omissions in the execution or enforcement of laws regarding child abuse.

California Government Code § 820.4 provides:

> A public employee is not liable for his act or omission, exercising due care, in the execution or enforcement of any law. Nothing

33

> in this section exonerates a public employee
> from liability for false arrest or false
> imprisonment.

California Government Code § 815.2(b) provides:

> Except as otherwise provided by statute, a
> public entity is not liable for an injury
> resulting from an act or omission of an
> employee of the public entity where the
> employee is immune from liability.

Defendants contend that Plaintiff's allegations against the County employees claim that they were abusing their discretion as social workers for the County when investigating the juvenile dependency case involving Plaintiff's son by allegedly falsifying reports, among other things, and that Defendants acted in the course and scope of their employment when doing so.  Citing *Miller v. Hoagland*, 247 Cal.App.2d 57 (1966), Defendants assert that when a public employee acting within the course and scope of his or her employment makes reports or statements as part of the execution or enforcement of law is protected by these immunities.

Defendants assert that Defendant Upton was acting within the course and scope of carrying out her duties under the California Welfare and Institutions Code as a County social worker charged with conducting investigations of suspected child abuse and preparing a plan for family reunification and maintenance.

In *Miller*, the City Attorney wrote a letter to the judge in a pending public nuisance abatement suit which was alleged by Miller to have misrepresented facts with fraudulent intent.  When Miller filed suit against the attorney, the Court of Appeals held in pertinent part:

34

> Even though Miller, as a pleader, used such
> words as malice and maliciously, the
> protection of immunity is not destroyed
> thought the mere use of terms such as those
> contained in the amended complaint.  The 1963
> California Tort Claims Act extends immunity
> to public employees even if discretion is
> abused by them, and even if their act is
> malicious and without probable cause, or is
> an intentional tort.  (See Gov.Code §§ 820.2,
> 821., 822.2, 820.4, 820.6 and 820.8; *Tietz v.*
> *Los Angeles Unified School Dist., supra*, 238
> Cal.App.2d 905, 911-912.)

Because of Government Code § 820.21 and the allegations of the FAC, Defendants Upton and Williams are not entitled to dismissal of the Fourth and Fifth Causes of Action as a matter of law.  Factual development will be necessary to determine whether or not the immunity in Government Code § 820.4 applies to the individual defendants.  Because of this ruling, the County and the Department of Social Services are not entitled to dismissal pursuant to Government Code § 815.2(b).

Defendants' motion to dismiss on this ground is DENIED.

> d.   <u>Immunity From Injury Caused by Malicious</u>
<u>Prosecution and Abuse of Process</u>.

Defendants move to dismiss Plaintiff's allegations that County employees committed abuse of process by instituting or maintaining the juvenile dependency proceedings on the ground of state immunity.

California Government Code § 821.6 provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without

35

probable cause."   This immunity applies the employee's agency

and to the County.  Cal.Gov.Code § 815.2(b).

Defendants cite *Jenkins v. County of Orange*, 212 Cal.App.3d

278, 284 (1989):

> [B]arrington has immunity for her
> investigation of the child abuse reports
> pursuant to her statutory duty; she did so
> 'within the scope of [her] employment ....'
> (§ 821.6.)  Barrington is also immune from
> suit for allegedly failing and refusing to
> consider all of the evidence and thereby
> misrepresenting information to the juvenile
> court.  Weighing and presenting evidence are
> prosecutorial functions.  As such, these acts
> are within the ambit of 'instituting or
> prosecuting any judicial or administrative
> proceeding with the scope of [Barrington's]
> employment ....' (§ 821.6).

*See also Alicia T. v. County of Los Angeles*, 222 Cal.App.3d 869,

883 (1990); *Citizens Capital Corp. v. Spohn*, 133 Cal.App.3d 887,

889 (1982)("[I]mmunity [under § 821.6], even from wrongfully

motivated action, is granted as a matter of public policy, to

avoid the risk of public officers avoiding their public duty for

fear of the burden of trial and risk of its outcome.").

All of the cases cited by Defendants predate the enactment

of Government Code § 820.21.  Given the allegations of the FAC,

dismissal on this ground is DENIED.

    e.   Immunity From Liability For Acts Or Omissions

Resulting from Exercise of Discretion.

Defendants move to dismiss the Fourth and Fifth Causes of

Action on the ground of immunity pursuant to California

Government Code § 820.2.

1    Section 820.2 provides that "[e]xcept as otherwise provided

2  by statute, a public employee is not liable for an injury

3  resulting from his act or omission where the act or omission was

4  the result of the exercise of the discretion vested in him,

5  whether or not such discretion be abused."

6    The immunity set forth in Section 820.2 applies to claims of

7  negligent and intentional conduct alleged in connection with a

8  child abuse investigation, *Alicia T.*, *supra*, 222 Cal.App.3d at

9  882-883, as well as to decisions concerning the ultimate

10  placement of a dependent child, *see County of Los Angeles v.*

11  *Superior Court*, 102 Cal.App.4th 627, 644-646 (2002); *Ronald S.*,

12  *supra*, 16 Cal.App.4th at 897-899.

13    Plaintiff argues that dismissal on this ground is not

14  appropriate:

15            Plaintiff has not alleged injury due to
             Defendant's [sic] discretionary acts.
16            Defendants had time to deliberate and plan
             their actions.  Plaintiff complains of
17            Defendant's [sic] conduct and behavior in
             their ministerial functions, in their non-
18            prosecutorial, non-judicial functionary role,
             their wrongful acts and omissions,
19            deprivation of constitutional rights,
             discrimination, and deliberately failing to
20            disclose exculpatory evidence beneficial to
             Plaintiff.  Plaintiff has alleged a duty owed
21            by Defendants to Plaintiff because
             Plaintiff's minor child was a dependent
22            'ward' under control of the Defendants' [sic]
             and there existed a case plan contract for
23            family maintenance and reunification
             services.  Plaintiff has alleged that
24            Defendants did not exercise due care in the
             course and scope of their employment.
25            Plaintiff has alleged Defendants acted in bad
             faith in carrying out the administration of
26            their ministerial duties and services towards

37

1      Plaintiffs.

2      In *Caldwell v. Montoya*, 10 Cal.4th 972 (1995), the

3  California Supreme Court, citing *Johnson v. State*, 69 Cal.2d 782

4  (1968), ruled:

5          ... *Johnson* concluded, a 'workable
           definition' of immune discretionary acts
6          draws the line between 'planning' and
           'operational' functions of government.
7          (*Johnson, supra,* 69 Cal.2d at pp. 793, 794.)
           Immunity is reserved for those '*basic policy*
8          *decisions* [which have] ... been [expressly]
           committed to coordinate branches of
9          government,' and as to which judicial
           interference would thus be 'unseemly.'  (*Id.*
10         at p. 793 ....)  Such 'areas of quasi-
           legislative policy-making ... are
11         sufficiently sensitive' (*id.* at p. 794) to
           call for judicial abstention from
12         interference that 'might even in the first
           instance affect the coordinate body's
13         decision-making process' (*id.* at p. 793).

14         On the other hand, said *Johnson*, there is no
           basis for immunizing lower-level, or
15         'ministerial,' decisions that merely
           implement a basic policy already formulated.
16         (*Johnson, supra,* 69 Cal.2d at p. 796.)
           Moreover, we cautioned, immunity applies only
17         to *deliberate and considered* policy
           decisions, in which a '[conscious] balancing
18         [of] risks and advantages ... took place.
           The fact that an employee normally engages in
19         "discretionary activity" is irrelevant if, in
           a given case, the employee did not render a
20         considered decision ....' (*Id.* at p. 795, fn.
           8).
21
           Recognizing that 'it is not a tort for
22         government to govern' ..., our subsequent
           cases have carefully preserved the
23         distinction between policy and operational
           judgments.   Thus, we have rejected claims of
24         immunity for a bus driver's decision not to
           intervene in one passenger's violent assault
25         against another ..., a college district's
           failure to warn of known crime dangers in a
26         student parking lot ..., a county clerk's

                            38

          **libelous statements during a newspaper
interview about official matters ...,
university therapists' failure to warn a
patient's homicide victim of the patient's
prior threats to kill her ..., and a police
officer's negligent conduct of a traffic
investigation once undertaken ....**

          **On the other hand, we have concluded that the
discretionary act statute does immunize
officials and agencies against claims that
they unreasonably delayed regulations under
which a murdered security guard might have
qualified himself to carry a defensive
firearm ... or negligently released a violent
juvenile offender into his mother's custody.**

**10 Cal.4th at 981-982.**

    **None of the cases cited by Defendants discuss the effect of
Section 820.21 on this immunity.  Because factual development is
necessary, dismissal of the FAC on this ground is DENIED.**

        **7.  <u>Further Leave To Amend</u>.**

    **As discussed above, Plaintiff is given leave to amend to
include the allegations described at the hearing concerning the
exceptions to *DeShaney* with the proviso that Plaintiff,
proceeding *in pro per*, cannot represent his minor son in this
action and cannot allege violations of his son's constitutional
rights.  *See discussion infra.***

    **Plaintiff's opposition to the motion to dismiss asserts that
the FAC "properly asserts causes of action for ... violations of
Title 18 U.S.C. Section 242 and 18 U.S.C. 245, Discrimination,
Title 18 U.S.C. Section 1001, Fraud and False Statements, Title,
42 U.S.C. Section 14141 ... and violations of the California
Family Code Section 3027.5."**

1    The FAC contains no such claims or causes of action; all of
2  these references are in Plaintiff's opposition to the motion to
3  dismiss.

4    Plaintiff is not given leave to amend to allege claims based
5  on violations of Title 18, United States Code.  "These criminal
6  provisions ... provide no basis for civil liability."  *Aldabe v.*
7  *Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980).

8    Plaintiff is not given leave to amend to allege claims based
9  on 42 U.S.C. § 14141.  Section 14141 provides:

10    **(a) Unlawful conduct**

11    It shall be unlawful for any governmental
      authority, or any agent thereof, or any
12    person acting on behalf of a governmental
      authority, to engage in a pattern or practice
13    of conduct by law enforcement officers or by
      officials or employees of any governmental
14    agency with responsibility for the
      administration of juvenile justice or the
15    incarceration of juveniles that deprives
      persons of rights, privileges, or immunities
16    secured or protected by the Constitution or
      laws of the United States.

17
      **(b) Civil Action by Attorney General**
18
      Whenever the Attorney General has reasonable
19    cause to believe that a violation of
      paragraph (1) [sic] has occurred, the
20    Attorney General, or in the name of the
      United States, may in a civil action obtain
21    appropriate equitable and declaratory relief
      to eliminate the pattern or practice.
22
   This statute, by its terms, does not apply to Plaintiff's claims.
23
   Plaintiff is not a juvenile, no administration of juvenile
24
   justice or incarceration of a juvenile is involved in this
25
   action.  Further, the statute does not provide a private right of
26

40

action.

     With regard to Plaintiff's reference to California Family Code § 3027.5, this statute provides:

>          (a) No parent shall be placed on supervised visitation, or be denied custody of or visitation with his or her child, and no custody or visitation rights shall be limited, solely because the parent (1) lawfully reported suspected sexual abuse of the child, (2) otherwise acted lawfully, based on a reasonable belief, to determine if his or her child was the victim of child abuse, or (3) sought treatment for the child from a licensed mental health professional for suspected sexual abuse.
>
>          (b) The court may order supervised visitation or limit a parent's custody or visitation if the court finds substantial evidence that the parent, with the intent to interfere with the other parent's lawful contact with the child, made a report of child sexual abuse, during a child custody proceeding or at any other time, that he or she knew was false at the time it was made.  Any limitation of custody or visitation, including an order for supervised visitation, pursuant to this subdivision, or any statute regarding the making of a false child abuse report, shall be imposted only after the court has determined that the limitation is necessary to protect the health, safety, and welfare of the child, and the court has considered the state's policy of assuring that children have frequent and continuing contact with both parents as declared in subdivision (b) of Section 3020.

     Although no case discussing Section 3027.5 was located, it does not appear to provide for a private right of action in federal court. The statute regulates the granting of custody and visitation rights by the state court.  Plaintiff's only reference in his opposition to Section 3027.5 is in his discussion of

qualified immunity under Section 1983.  If Plaintiff believes that the state court improperly limited his custody and/or visitation rights under Section 3027.5, his remedy is appeal to the California appellate courts.  Leave to amend to allege a violation of Section 3027.5 is denied as futile.

<u>CONCLUSION</u>

For the reasons stated above:

1.  Defendants' motion to strike is GRANTED;

2.  Defendants' motion to dismiss is GRANTED IN PART WITH LEAVE TO AMEND, GRANTED IN PART WITHOUT LEAVE TO AMEND, DENIED IN PART, AND DEFERRED IN PART FOR LIMITED DISCOVERY ON THE ISSUES OF ABSOLUTE AND QUALIFIED IMMUNITY FROM LIABILITY UNDER SECTION 1983;

3.  Plaintiff shall file a Fifth Amended Complaint within 20 days of the filing date of this Memorandum Decision and Order. Failure to timely comply will result in the dismissal of this action.

IT IS SO ORDERED.

Dated:   **May 9, 2008**                          _____/s/ Oliver W. Wanger_____
                                                 UNITED STATES DISTRICT JUDGE