**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **STANLEY BRADFORD CLARKE,** ) | **1:07-CV-0888 AWI-SMS** |
| ) | |
| **Plaintiff,** ) | **ORDER GRANTING** |
| **v.** ) | **DEFENDANTS' MOTION FOR** |
| ) | **SUMMARY JUDGMENT** |
| **SANDRA UPTON, AMPARO** ) | |
| **WILLIAMS; DEPARTMENT OF** ) | (Doc. No. 130) |
| **SOCIAL SERVICES; and COUNTY OF** ) | |
| **MADERA** ) | |
| ) | |
| **Defendants.** ) | |

_____

This is a civil rights action filed by Plaintiff Stanley Bradford Clarke ("Clarke"), now proceeding *pro se*, against Defendants County of Madera (the "County"); County of Madera Department of Social Services ("DSS"); Sandra Upton ("Upton") and Amparo Williams ("Williams"), both alleged to be agents of the County and employed as social workers with DSS. The operative complaint is the Seventh Amended Complaint ("7AC"). *See* Court's Docket, Doc. No. 122. In essence, the 7AC alleges a deprivation of constitutional rights under 42 U.S.C. § 1983. Clarke claims Defendants negligently and/or intentionally falsified or misrepresented evidence in juvenile dependency proceedings involving the placement of Clarke's son with the mother, that Defendants were negligent or abused their discretion in conducting the investigation and the juvenile dependency proceedings, and that Defendants' actions were motivated by racial bias or discrimination based on Clarke's American Indian ancestry and/or by gender bias based on preference for placement of a child with the mother rather than the father. Defendants now

move for summary judgment in their favor.  *See* Court's Docket, Doc. No. 130.  Clarke opposes[1]
the motion.  *See* Court's Docket, Doc. No. 148.  The court has considered the moving papers
and, for the reasons that follow, Defendants' motion will be granted.

**BACKGROUND**

A.     **Procedural History**

The original complaint in this action was filed in the Madera County Superior Court on
September 20, 2006, and set forth a single cause of action for intentional tort against Upton and
the County.  The Superior Court sustained a demurrer to the complaint, and Clarke filed a First
Amended Complaint on December 22, 2006.  The Superior Court sustained a second demurrer,
and Clarke filed Second Amended Complaint.  The Superior Court again sustained the
Defendants' demurrer, and Clarke filed a Third Amended Complaint on May 25, 2007.  The
Third Amended Complaint set forth causes of action under 42 U.S.C. §§ 1981 and 1983, and
added DSS and Williams as Defendants.

Defendants removed the action to this court and filed a motion to dismiss on June 21,
2007.  The court[2] granted the motion, with leave to amend.  Clarke filed a Fourth Amended
Complaint on November 19, 2007.  Defendants again filed a motion to dismiss and a motion to
strike.  The court granted the motion to dismiss in part and denied it in part, and granted leave to
amend on specific issues.  Clarke, then represented by counsel, filed a Fifth Amended Complaint.
Defendants filed another motion to dismiss, and another motion to strike.  Clarke filed counter
motions to amend the pleadings and to appoint Clarke as guardian ad litem for his minor son.
The court granted the motion to dismiss in part, deferred ruling in part, and denied it in part.  The
court denied Clarke's application to be appointed as guardian ad litem.  Clarke, this time

---

[1] Clarke filed an Opposition to Defendant's motion on December 27, 2011.  *See* Court's
Docket, Doc. No. 147.  On December 29, 2011, Clarke filed an Amended Opposition, adding his
Separate Statement of Material Facts. *See id.* Doc. No. 148.  Defendants appear to have replied
to the Amended Opposition, and the court will consider only the Amended Opposition on the
motion for summary judgment.

[2] Senior U.S. District Judge Oliver W. Wanger presiding.  Due to the retirement of Judge
Oliver W. Wanger, this case was transferred to the undersigned on October 19, 2011.

representing himself, filed a Sixth Amended Complaint on July 27, 2009.  Defendants filed
another motion to dismiss.  The court granted the motion in part and denied it in part.  On April
16, 2010, Clarke filed his Seventh Amended Complaint.  Defendants filed an answer on May 5,
2010.

Clarke alleges seven causes of action.  The First and Second Causes of Action are for
violations of 42 U.S.C. § 1983, and allege Defendants deprived Clarke of his constitutional rights
and were motivated by racial and/or gender bias.  The Third Cause of Action is for intentional
infliction of emotional distress by Upton, DSS, and the County.  The Fourth Cause of Action is
for negligent infliction of emotional distress by Upton, DSS, and the County.  The Fifth Cause of
Action is for a violation of 42 U.S.C. § 1985, and alleges Defendants conspired to deprive Clarke
of his constitutional rights and were motivated by racial and/or gender bias.  The Sixth Cause of
Action is for a violation of 42 U.S.C. § 1986, and alleges DSS and the County failed to prevent
the deprivation of Clarke's rights.  The Seventh Cause of Action is a *Monell* claim against DSS
and the County, alleging that they established policies, procedures, customs or practices that led
to violations of Clarke's constitutional rights.

**B.    Facts**[3]

This action arises out of juvenile dependency proceedings involving the minor son of
Clarke and his former wife.  Clarke contends his minor son reported incidences of child abuse by
the child's mother, which Clarke reported to DSS employees.  Pl.'s Decl. ¶ 3.  On or about
November 24, 2004, the Kern County Superior Court held a hearing to determine the placement
of the minor.  DUMF No. 2; PUMF No. 10; Court's Docket, Doc. No. 127 at 5, ¶ 3. The Superior

---

[3] In its Scheduling Conference Order, the court previously set forth admitted facts to be
deemed proven without further proceedings.  *See* Court's Docket, Doc. No. 127.  "DUMF" refers
to Defendants' Statement Undisputed Material Facts.  *See* Court's Docket, Doc. No. 130-2.
"PUMF" refers to Plaintiff's Separate Statement of Undisputed Material Facts.  *See* Court's
Docket, Doc. No. 148.  "DRPUMF" refers to Defendants' Response to Plaintiff's Separate
Statement of Undisputed Material Facts.  *See* Court's Docket, Doc. No. 150-1.  On summary
judgment, the court will note any factual disputes and will construe any ambiguities in the light
most favorable to Clarke, the non-moving party.  *See Stegall v. Citadel Broad, Inc.*, 350 F.3d
1061, 1065 (9th Cir. 2003).

Court ordered supervised visitation for the mother of Clarke's minor son, and ordered that she not sleep in the same bed as the minor. *Id.* The Kern County Superior Court further ordered that the minor be evaluated by Dr. Jay Fisher, a child psychologist. *See id.* In January 2005, a pediatrician noted signs of physical abuse and injuries on the minor's body. DUMF No. 3.; Doc. No. 127 at 5, ¶ 4. The pediatrician's notes relate that the minor's mother had inflicted these injuries by hitting the child with a wooden spoon. *Id.* On January 10, 2005, the minor was placed in the temporary care of Madera County Child Protective Services ("CPS") by court order, and was later placed in foster care. DUMF No. 4; Doc. No. 127 at 5, ¶ 4. DSS filed a dependency petition in the Madera County Superior Court, pursuant to California Welfare and Institutions Code section 300 (the "WIC 300 Petition"). DUMF No. 5. DSS personnel informed Clarke that the minor was required to remain in their custody until the dependency hearing, but both parents had weekly supervised visitation rights. DUMF No. 6; Pl.'s Depo. at 35:18-36:4; 75:15-76:6. The original WIC 300 Petition did not contain allegations or charges against Clarke. PUMF No. 2. All of the hearings on the WIC 300 Petition held prior to April 28, 2005, concerned allegations and charges against the minor's mother. PUMF No. 3.

A Child Sexual Abuse Response Team ("CSART") completed an interview of the minor in early 2005, with the Deputy District Attorney present, as well as a Madera Police Department detective, a District Attorney's Office investigator, and DSS employees Heather Sharp and Allyson Cookson. DUMF No. 7; Court's Docket, Doc. No. 127; Pl.'s Depo. at 59:4-19. The interview was conducted without Clarke or any relative present. *Id.* The CSART panel was unanimous in concluding that the minor was a credible witness with regard to his allegations of sexual abuse. DUMF No. 9; Pl.'s Depo. at 59:20-60:9. On February 21, 2005, Dr. Fisher issued his report on the psychological examination of Clarke's minor son. DUMF No. 9; Doc. No. 127 at 6, ¶ 6. The report indicated that the minor was very intelligent. *Id.* Dr. Fisher concluded that the mother appeared to have hurt her son and placed him in a position where he was physically injured and/or physically abused. *Id.* Dr. Fisher recommended that the minor be returned to the custody of Clarke and that the mother have supervised visits with the child, obtain psychotherapy

1   for her and the child, and take an anger management course.  *Id.*

2       On April 11, 2005, the Madera County Superior Court held a dependency hearing, which

3   was contested.  DUMF No. 10; Doc. 127 at 6, ¶ 7.  During the dependency hearing, the County

4   introduced into evidence the CSART interview findings.[4]  DUMF No. 11; Pl.'s Depo at 63:3-15;

5   91:11-23.  Heather Sharp testified as to the process of the interview and the unanimous

6   conclusion that the physical and sexual abuse allegations were substantiated.  *Id.*  On or about

7   June 10, 2005, the Superior Court, the Honorable Thomas Bender presiding, issued its decision

8   in the dependency case.  DUMF No. 12; Doc. No. 127 at 6, ¶ 8.  Judge Bender found there was

9   one incident of physical abuse by the mother, and ordered that the minor become a dependent of

10  the court.  *Id.*  Judge Bender ordered an alternating visitation schedule consisting of custodial

11  time with both parents.  *Id.*

12      In June 2005, after the Superior Court adjudicated the minor a dependent of the court,

13  DSS assigned Defendants Upton and Williams to the case.  DUMF Nos. 18-19; Upton Decl. ¶¶

14  9-10.  Upton and Williams were employees of the County, and were acting within the course and

15  scope of their employment at the time of the events giving rise to this action.  DUMF No. 13;

16  Doc. No. 127 at 5, ¶ 1.  Williams was Upton's supervisor on this case, and her only involvement

17  was in a supervisory manner.  DUMF No. 20; Upton Decl. at ¶ 10. Upton worked for DSS in

18  various capacities from 1986 through 1994.  DUMF No. 14; Upton Decl. ¶¶ 3-4. She returned to

19  her employment as a social worker with DSS in February 2003 and retired in July 2010.  *Id.*  As

20  an employee, Upton received a yearly training course in civil rights where the County's anti-

21  discrimination policy was discussed.  DUMF No. 15; Upton Decl. ¶ 6.

22      In the case involving Clarke's minor son, Upton was assigned to provide family

23

24      [4] Plaintiff served a subpoena duces tecum on the City of Madera Police Department for
    the production of the CSART taped evidence and transcript, and the police department responded
25  that "No copies or records are transmitted because: Tape is not in our possession.  You may
    contact Madera County Child Protective Services, Alison Cookson."  PUMF No. 12; Ex. C.
26  Clarke alleges DSS claimed they did not know the whereabouts of the tape.  However, there is no
    indication that Clarke served a subpoena on CPS or DSS, and neither party has submitted any
27  evidence relating to the tape.

28

maintenance services to the parents, and to ensure compliance with the court-ordered service plan. DUMF Nos. 22, 25, 27; Upton Decl. ¶¶ 12, 17. When Upton received the case file, she read and reviewed various reports and notes made from previous social workers assigned to the case, as well as the Superior Court's minute orders. DUMF No. 21; Upton Decl. ¶ 11. From reviewing the file, Upton understood that the Superior Court did not find any sexual abuse of the minor by his mother, but did find one incident of physical abuse of the minor by his mother. DUMF No. 23; Upton Decl. ¶¶ 13, 15. Upton also understood that the Superior Court found Clarke had abused the minor's mother,[5] and some of that abuse may have occurred in front of the minor. *Id.* The Superior Court also stated it was bothered by the behavior engaged in by Clarke, including coaching and rehearsal with the minor regarding sexual abuse by the mother. DUMF

---

[5] Clarke contends that during the juvenile dependency hearing, the mother complained of verbal abuse, which was discussed in marriage counseling, and the Superior Court made a finding of verbal abuse. Pl.'s Decl. ¶ 4. Clarke further contends that, contrary to the Superior Court's finding, Upton maintained Clarke had physically abused the minor's mother, and she included that opinion in her reports, and her Declaration in support of the instant motion. Pl.'s Decl. ¶ 5. For purposes of summary judgment, the Court will construe the facts in the light most favorable to Clarke and assume the Superior Court made a finding of verbal abuse only.

In his Separate Statement of Material Facts, Clarke disputes the paragraphs and portions of Defendants' Separate Statement of Undisputed Material Facts that are based on Upton's Declaration and attached exhibits "on the grounds that these examples of fact are not ultimate proof of fact because their credibility may be weighed and impeached at trial." PUMF at 1. This statement alone is insufficient to create a triable issue.

A party asserting that a fact cannot be or is genuinely disputed must support that assertion by:

(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

(B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that the adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Clarke also seeks judicial notice of the following documents: (1) the underlying juvenile dependency case file BJP015618, clerk's transcripts, and the reporters' transcripts; (2) Defendant Sandra Upton's deposition transcripts and exhibits of evidence; (3) the 2006 Madera County Grand Jury Report; (4) Defendant's Rule 26 Supplemental Disclosure and Defendant Upton's County Service Logs. *See* Court's Docket, Doc. No. 148. However, Clarke failed to attach these documents to his request or lodge them with the Court. Clarke's request for judicial notice is therefore denied.

No. 24; Upton Decl. ¶ 14.  Upton understood the Superior Court's discussion to mean that Clarke was prohibited from further coaching and rehearsal of the minor, and the Superior Court ordered that each parent not make derogatory statements about the other parent or discuss the case with the minor.  *Id.*  Upton contends that by the time she was assigned to the case, the court had determined that both parents were emotionally abusive to the minor, and had dismissed the sexual and physical abuse allegations.  Upton Decl. ¶ 16.

Upton's first home visit with Clarke and the minor occurred on or about July 13, 2005, at Clarke's home in Madera.  DUMF No. 28; Upton Decl. ¶ 18.  On or about August 22, 2005, the minor was examined by Dr. Susan Napolitano, a court-appointed custody evaluator, who filed a suspected child abuse report with DSS.  PUMF No. 7, Ex. A.  On the morning of September 12, 2005, Clarke contacted Upton and informed her that because of his work schedule, the minor would be at the home of a babysitter, and that she had permission to conduct her monthly home visit at the babysitter's house.  DUMF No. 31; Pl.'s Decl. ¶ 7; Upton Decl. ¶ 20.  That same day, Clarke contacted the Madera Police Department, alleging that the mother abused the minor. DUMF No. 30; Upton Decl. ¶ 24.  Clarke contends he informed Officers Pettersen and Wiles that there was a CPS case in Madera County Superior Court, and that custody was exchanged on a 50/50 basis between Clarke and the minor's mother.  Pl.'s Decl. ¶ 8.  On September 13, 2005, Clarke left a voicemail for Upton stating that he was going to take the day off and the minor would not be going to the babysitter.  DUMF No. 32; Upton Decl. ¶ 21.  Clarke did not tell Upton about the alleged abuse[6] during their September 12 conversation, or in his September 13 voicemail.  DUMF No. 33; Upton Decl. ¶ 25.  Upton did not respond to the voicemail.  Pl.'s Decl. ¶ 9.

On September 14, 2005, the attorney representing the minor's mother contacted Upton inquiring about the location of the minor.  DUMF No. 34; Upton Decl. ¶ 22.  On September 15,

---

[6] Clarke contends his message stated that he would be home all day "because of what had happened," and he expected that Upton had already been notified by the police about the allegations of abuse.  Pl.'s Decl. ¶ 9.

2005, unaware of the abuse allegations and Clarke's contact with the Madera Police Department, Upton was told that DSS wanted to file a missing persons report. DUMF No. 35; Upton Decl. ¶23. Later that day, the Madera Police Department informed DSS that they were in contact with Clarke and that he and the minor would come to the police department in the afternoon. DUMF No. 37; Upton Decl. ¶ 23; Pl.'s Decl. 10. Upton met Clarke and the minor at the Madera Police Department on September 15, 2005. DUMF No. 38; Upton Decl. ¶ 10. A police officer informed Upton that Clarke filed an abuse report on September 12, 2005. DUMF No. 39; Upton Decl. ¶ 24. Upton was also informed that another officer had advised Clarke not to release the minor to his mother, as law enforcement did not know he was a dependent of the juvenile court. DUMF No. 39; Upton Decl. ¶ 26.

On September 15, 2005, Upton took the minor to Dr. Aftab Naz to examine the alleged physical abuse. DUMF No. 40; Upton Decl. ¶27. Based on her conversations with Dr. Naz, Upton understood that he found no injuries or discoloration[7] to the minor's genitals. DUMF No. 41; Upton Decl. ¶28, Ex. C. As a result of Dr. Naz's findings of no physical injury, Upton released the minor to his mother, per her supervisor's instructions. DUMF No. 43; Upton Decl. ¶ 30. DSS informed Upton that the minor's attorney filed a petition pursuant to California Welfare and Institution Code section 388 to modify the juvenile dependency ruling, seeking to remove the minor from Clarke's care and placing him in his mother's care. DUMF No. 46; Upton Decl. ¶ 32. Upton notified Clarke of the section 388 petition hearing scheduled for September 16, 2005.

[7] Upton contends Dr. Naz did note that the minor had fluid on his testicle, and when fluid is excreted it can cause bluish discoloration. DUMF No. 41; Upton Decl. ¶28, Ex. C. Dr. Naz advised that the child be seen at Children's Hopital for follow-up. *Id.* Clarke disputes this and claims Dr. Naz testified in juvenile court that he did not tell Upton that it was possible for fluid to be excreted that resulted in a bluish discoloration. PRUMF No. 7; Pl.'s Decl. ¶ 11. Upton later spoke to Dr. Devona Kaji, a urologist at Children's Hospital, who told her she found that the minor had a hernia and leakage of fluid which could cause discoloration. DUMF No. 44; Upton Decl. ¶ 31. Clarke also disputes this and contends Dr. Kaji told him that it was not possible for secretion to cause a bluish discoloration. Pl.'s Decl. ¶ 12. It is undisputed that the minor was born with an undescended testicle, which required surgery. *See* Upton Decl., Ex. C. Pl.'s Decl. ¶ 12.

DUMF No. 47; Upton Decl. ¶ 33. Upton attended the ex parte hearing on September 16, 2005, but did not testify.  DUMF Nos. 48-49; Upton Decl. ¶¶ 34-35.  Clarke's attorney requested an evidentiary hearing.  DUMF No. 51; Upton Decl., Ex. B at 4:6-12.  The Superior Court granted the request for evidentiary hearing, but denied Clarke's attorney's request for a return of the child to Clarke and for a second CSART interview.  DUMF Nos. 52, 57-58; Upton Decl., Ex. B at 5:13-15.  The Superior Court granted the section 388 petition for modification on a temporary basis pending the evidentiary hearing, and removed the child from Clarke's care.  DUMF No. 59, 62; Upton Decl., Ex. B at 5:20-24.  The Superior Court stated that Clarke would have supervised visitation upon further psychological evaluation.  DUMF No. 60; Upton Decl., Ex. B at 5:25-6:3.

Clarke's attorney further indicated to the Superior Court that the parties had agreed to remove Upton from the case and requested that the judge implement that agreement.  DUMF No. 64; Upton Decl., Ex. B at 12:2-10.  The Superior Court instructed Clarke that it would not remove Upton from the case, but Clarke could file a motion to do so if he wished.  DUMF No. 66; Upton Decl., Ex. B at 12:19-21.  It appears Clarke never filed such a motion.  DUMF No. 67; Upton Decl. ¶ 36.  Clarke contacted the Madera County Grand Jury in July and September 2005 and made a formal complaint against DSS alleging indifference to his allegations of child abuse.  Pl.'s Decl. ¶ 13.  The Grand Jury investigated Clarke's claims and published a final report in 2006. *Id.*

In advance of the evidentiary hearing on the minor's petition for modification, Upton prepared a social study report dated November 8, 2005, for the Superior Court.  DUMF Nos. 68, 69; Upton Decl. ¶¶ 38-39, Ex. C.  The social study report discussed 's violations of the June 10, 2005 dependency ruling, including the fact that Clarke continued to coach the minor, and that he made derogatory statements about the other parent in front of the minor.  DUMF No. 70; Upton Decl. ¶ 40, Ex. C.   Clarke contends Upton deliberately omitted from her report the third page of Dr. Napolitano's August 22, 2005 report.  *See* Court's Docket, Doc. No. 136; Upton Decl., Ex.

1   C.  Clarke alleges this page contained information detailing a new case of abuse that occurred

2   after the minor had returned home from foster care, which Upton failed to investigate properly.[8]

3   Upton contends she sent the full report to her supervisor for review, who in turn sent it to the

4   court supervisor.  DUMF No. 84; Upton Decl. ¶ 56.

5        The evidentiary hearing was continued multiple times to April 18, 2006.  DUMF Nos. 72-

6   73; Upton Decl.¶¶ 42-43.  Upton did not testify.  DUMF No. 73; Upton Decl. ¶ 43. The Superior

7   Court also continued the statutory six-month status review pending its ruling on the section 388

8   petition to modify.  DUMF No. 75; Upton Decl. ¶ 45.  Upton prepared a six-month status report

9   for the court's review.  *Id.*; Upton Decl., Ex. D.  The Superior Court heard the six-month status

10  review on July 18, 2006, and found that the minor was to remain a dependent of the Madera

11  Juvenile Court.  DUMF No. 77; Upton Decl. ¶ 47.  Upton later became aware that Clarke had

12  filed, or was about to file, a lawsuit against her, and she wrote a letter to the heads of DSS's

13  Child Welfare Department stating that she needed to be removed from the case.  DUMF No. 78;

14  Upton Decl. ¶ 43.  As a result, in or about September 2006, the case was assigned to another

15  social worker.  *Id.*  Clarke eventually regained joint physical and legal custody of the minor on

16  September 18, 2007.  *See* Court's Docket, Doc. No. 148 at 12.

17       Upton claims she did not learn of Clarke's claim of Native American ancestry until a

18  hearing on February 6, 2006.  DUMF No. 79; Upton Decl. ¶ 50.  DSS provided Clarke with the

19  Indian Child Welfare Act documents, but all of the tribes contacted by Clarke informed DSS that

20  Clarke was not a member of their tribe.  DUMF No. 80; Upton Decl. ¶ 51.  Upton's husband of

21

22

23       [8] Clarke has not submitted to the court the missing third page of the report, and his
    allegations regarding the contents of that page and the adequacy of Upton's actions are not
24  otherwise supported by the record.  The court also notes that Dr. Napolitano's signature appears
    at the bottom of the second page of the report, suggesting that there was no third page. Clarke's
25  unsupported allegations are insufficient to create a genuine issue of fact as to whether Upton
    deliberately withheld the page of the report.

26

27

28

10

forty-five years is of Native American ancestry and so are her children.  DUMF No. 81; Upton

Decl. ¶ 52.  During her employment with DSS as a social worker in the Family Maintenance

Unit, Upton claims she was assigned to cases wherein she concluded that the father should

receive full custody of the child.  DUMF No. 83; Upton Decl. ¶ 54.

## II.    LEGAL STANDARD

Summary judgment is appropriate when it is demonstrated that there exists no genuine

issue as to any material fact, and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Poller v. Columbia*

*Broadcast System*, 368 U.S. 464, 467 (1962);  *Southern California Gas Co. v. City of Santa Ana*,

336 F.3d 885, 888 (9th Cir. 2003).  Under summary judgment practice, the moving party:

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Miller v. Glenn Miller Productions, Inc.*, 454

F.3d 975, 987 (9th Cir. 2006).  A fact is material if it could affect the outcome of the suit under

the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986);

*Miller*, 454 F.3d at 987.   "[W]here the nonmoving party will bear the burden of proof at trial on

a dispositive issue, a summary judgment motion may properly be made in reliance solely on the

'pleadings, depositions, answers to interrogatories, and admissions on file.'"  *Id.*;  *Fortyune v.*

*American Multi-Cinema, Inc.*, 364 F.3d 1075, 1080 (9th Cir. 2004).  Indeed, summary judgment

should be entered, after adequate time for discovery and upon motion, against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial.  *Celotex Corp.,* 477 U.S. at 322;

*Miller*, 454 F.3d at 987.   "[A] complete failure of proof concerning an essential element of the

nonmoving party's case necessarily renders all other facts immaterial."  *Celotex Corp.,* 477 U.S.

1    at 322.  In such a circumstance, summary judgment should be granted, "so long as whatever is

2    before the district court demonstrates that the standard for entry of summary judgment, as set

3    forth in Rule 56(c), is satisfied."  *Id.* at 323.

4         If the moving party meets its initial responsibility, the burden then shifts to the opposing

5    party to establish that a genuine issue as to any material fact actually does exist.  *Matsushita Elec.*

6    *Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *First Nat'l Bank of Arizona v. Cities*

7    *Serv. Co.*, 391 U.S. 253, 288-89 (1968); *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies,*

8    *Inc.*,210 F.3d 1099, 1103 (9th Cir. 2000).   The opposing party cannot rest on "'the mere

9    allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific

10   facts showing that there is a genuine issue for trial.'"  *Estate of Tucker v. Interscope Records*,

11   515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Fed. R. Civ. Pro. 56(e)); *Miller*, 454 F.3d at 987.

12   In attempting to establish the existence of this factual dispute, the opposing party is required to

13   tender evidence of specific facts in the form of affidavits, and/or admissible discovery material,

14   in support of its contention that the dispute exists.  Rule 56(e); *Matsushita*, 475 U.S. at 586 n.11;

15   *First Nat'l Bank*, 391 U.S. at 289; *Miller*, 454 F.3d at 987.  The opposing party must also

16   demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the

17   suit under the governing law, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v.*

18   *Industrial Maintenance Engineering & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000),

19   and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a

20   verdict for the nonmoving party, *Anderson*, 477 U.S. 248-49; *In re Caneva*, 550 F.3d 755, 761

21   (9th Cir. 2008); *Lindsey v. SLT Los Angeles, LLC*, 447 F.3d 1138, 1144 (9th Cir. 2006).

22        In the endeavor to establish the existence of a factual dispute, the opposing party need not

23   establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual

24   dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at

25

26

27

28

12

trial." *First Nat'l Bank*, 391 U.S. at 290;  *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007).  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); *International Union of Bricklayers v. Martin Jaska, Inc.*, 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any.  Rule 56(c); *Poller*, 368 U.S. at 468; *Price v. Sery*, 513 F.3d 962, 965 n.1 (9th Cir. 2008); *Lockett v. Catalina Channel Exp., Inc.*, 496 F.3d 1061, 1064 (9th Cir. 2007).  "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999) (quoting *Anderson*, 477 U.S. at 255); *Miller*, 454 F.3d at 987; *Stegall v. Citadel Broad, Inc.*, 350 F.3d 1061, 1065 (9th Cir. 2003).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).

Additionally, the court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references.  *See Southern Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003); *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

1    **III.      DISCUSSION**

2          **A.      Section 1983 Claims**

3          As a preliminary matter, Defendants request a ruling that DSS is not a distinct public

4    entity from the County of Madera and cannot be sued as such. *See* Defs.' RJN at 1.  Clarke does

5    not object. *See* Court's Docket, Doc. No. 148 at 2.  The court will grant the request. "Every

6    person who . . . subjects . . . any citizen of the United States or other person within the

7    jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

8    Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or

9    other proper proceeding for redress . . . ."  42 U.S.C. § 1983.  Local governmental units, such as

10   counties or municipalities, are "persons" within the meaning of Section 1983.  *Monell v. New*

11   *York City Dept. of Social  Services*, 436 U.S. 658 690-91 & n. 54 (1978); *Will v. Michigan Dept.*

12   *of State Police*, 491 U.S. 58, 69-71 (1989); *Hervey v. Estes*, 65 F.3d 784, 791 (9th Cir. 1995).

13   Municipal departments and sub-units, however, are generally not considered "persons" within the

14   meaning of Section 1983.  *United States v. Kama*, 394 F.3d 1236, 1240 (9th Cir. 2005)

15   (Ferguson, J., concurring); *Chadwick v. San Diego Police Dept.*, 2010 WL 883839, *6 (S.D.Cal.

16   2010); *Sholtis v. City of Fresno*, 2009 WL 4030674, *4 (E.D.Cal. 2009); *Harvey v. City of*

17   *Fresno*, 2009 WL 3157524, *5 (E.D.Cal. 2009); *Brouwer v. City of Manteca*, 2008 WL 2825099,

18   *3 (E.D.Cal. 2008).  Because Defendant DSS is a municipal department within the County of

19   Madera, DSS is not a "person" who can be sued for alleged constitutional violations pursuant to

20   Section 1983.

21          To obtain relief under 42 U.S.C. § 1983, a plaintiff must prove that the defendant (1)

22   violated a right secured by the Constitution or laws of the United States and (2) acted under color

23   of state law. *See* 28 U.S.C. § 1983; *West v. Atkins*, 487 U.S. 42, 48, 108 S. Ct. 2250, 101

24   L.Ed.2d 40 (1988); *Collins v. Womancare*, 878 F.2d 1145; 1147-48 (9th Cir. 1989).  There must

25

26

27

28

1   be an actual connection between the defendant's alleged acts or omissions and the deprivation

2   suffered by the plaintiff.  *See* 42 U.S.C. § 1983; *Monell*, 436 U.S. at 692; *Rizzo v. Goode*, 423

3   U.S. 362, 96 S. Ct. 598 (1976).

4         Clarke's Section 1983 claim is encompassed in two separate counts.  The First Cause of

5   Action alleges Defendants "negligently and/or intentionally falsified and/or misrepresented

6   evidence in juvenile dependency proceedings involving the placement of plaintiff's minor child .

7   . . resulting in plaintiff's loss of custody, loss of visitation rights, and other rights protected under

8   the United States Constitution and the Fourth and Fourteenth Amendments including plaintiff's

9   fundamental right to participate in the parenting and raising of his son."  7AC at 19.  The Second

10  Cause of Action alleges "plaintiff was charged with kidnapping and/or child abduction and/or

11  other criminal charges arising from an alleged violation of custody and/or visitation orders

12  concerning plaintiff's son" and that Defendants knew, but failed to reveal to the Superior Court,

13  that Clarke had not kidnapped his son, had not violated any court-issued custody or visitation

14  orders, and had at all times acted upon instructions given to him by law enforcement.  *Id.* at 21.

15  Clarke alleges Defendants intended to ensure that Clarke's son was placed with Clarke's former

16  spouse rather than with him, based on racial and/or gender bias, and/or in retaliation for Clarke's

17  reporting of suspected child abuse, and that such conduct violated his fundamental liberty interest

18  in raising his son.  *Id.* at 19-22.

19        The court notes that neither party addressed the alleged Fourth Amendment violation in

20  the briefing on this motion, nor does there appear from the facts to be a basis for a Section 1983

21  claim based on a Fourth Amendment violation.  Thus, the court will analyze the Section 1983

22  claim only as it relates to the alleged equal protection and substantive due process violations of

23  the Fourteenth Amendment.

24

25

26

27

28

1      **1.      Fourteenth Amendment**

2          "The Equal Protection Clause of the Fourteenth Amendment commands that no State

3   shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is

4   essentially a direction that all persons similarly situated should be treated alike." *Serrano v.*

5   *Francis,* 345 F.3d 1071, 1081 (9th Cir.2003) (citation omitted). "Denials [of the equal protection

6   of the laws] by any person acting under color of state law are actionable under § 1983." *Dyess ex*

7   *rel. Dyess v. Tehachapi Unified Sch. Dist.,* No. 1:10–CV–00166–AWI–JLT, 2010 WL 3154013,

8   at *6 (E.D.Cal. Aug.6, 2010). "To succeed on a § 1983 equal protection claim, the plaintiffs

9   must prove the defendants acted in a discriminatory manner and that the discrimination was

10  intentional." *Reese v. Jefferson School Dist. No. 14J,* 208 F.3d 736, 740 (9th Cir.2000).

11         To the extent Clarke alleges Defendants' actions deprived him of his constitutional equal

12  protection rights based on racial or gender discrimination, even drawing all reasonable inferences

13  in favor of Clarke, there are no facts in the record tending to suggest that the alleged

14  misrepresentations or failure to disclose certain evidence was intentional or based on Clarke's

15  Native American ancestry or gender.  Clarke's allegations relate to ex parte proceedings initiated

16  by the minor son's counsel on September 15, 2005, seeking a modification of the Superior

17  Court's dependency ruling.  As the court stated previously in its Order on Defendants' Motion to

18  Dismiss the Fifth Amended Complaint, neither Upton nor Williams initiated the dependency

19  proceeding and nothing prevented Clarke from advising the Superior Court of the existence of

20  the alleged evidence of additional instances of child abuse.  *See* Court's Docket, Doc. No.  92 at

21  37.  Further, the evidence suggests that Clarke's version of events - that he was instructed by the

22  police not to exchange the minor - was communicated to the Superior Court in the reports

23  submitted by Upton.  *See* Upton Decl., Exs. C, D.  Clarke was represented by counsel at the ex

24  parte hearing on September 16, 2005.  The Superior Court judge issued what he emphasized was

25

26

27

28

1   a temporary ruling and, at the request of Clarke's counsel, set the evidentiary hearing on the

2   modification petition for October 11, 2005.  Clarke has cited no facts, and the court's review of

3   the record reveals none, tending to show that Upton violated Clarke's constitutional rights by

4   withholding exculpatory or impeachment evidence, or by failing to present evidence exculpating

5   Clarke during the juvenile dependency hearings in state court.

6       As discussed above, the opposing party cannot rest on "' the mere allegations or denials

7   of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that

8   there is a genuine issue for trial.'"  *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030

9   (9th Cir. 2008) (quoting Fed. R. Civ. Pro. 56(e)). The evidence submitted by Clarke does not set

10   forth specific facts showing that there is a genuine issue for trial with respect to the alleged equal

11   protection violation, as required by Federal Rule of Civil Procedure 56(e).

12       Clarke also alleges that Defendants' actions interfered with his constitutionally protected

13   parental rights.  Parents have a constitutionally protected liberty interest in the care and custody

14   of their children. *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).

15   A parent "may state a cause of action under § 1983 when she alleges that the state terminated her

16   parent-child relationship without due process of law." *Smoot v. City of Placentia*, 950 F. Supp.

17   282, 283 (C.D. Cal. 1997).  The Ninth Circuit has generally characterized the right to familial

18   association as a liberty right under the Due Process Clause of the Fourteenth Amendment.  *Lee v.*

19   *City of Los Angeles,* 250 F.3d 668, 685-86 (9th Cir.2001); *Kelson v. City of Springfield,* 767 F.2d

20   651, 655 (9th Cir.1985); *Estate of Imrie v. Golden Gate Bridge Highway and Transp. Dist.,* 282

21   F.Supp.2d 1145, 1150 n. 4 (N.D.Cal.2003).  The Ninth Circuit has applied the "deliberate

22   indifference" standard to Fourteenth Amendment familial association claims.  *See Lee v. City of*

23   *Los Angeles,* 250 F.3d 668 (9th Cir. 2001). In *Lee* the Ninth Circuit reversed the trial judge's

24   dismissal of the plaintiffs' claims, finding that the plaintiffs had stated a cause of action by

25

26

27

28

alleging "reckless, intentional and deliberate acts and omissions of defendants," constituting an "unwarranted interference" with the rights of family members. *Id.* at 685-86.

In a Ninth Circuit case involving a Section 1983 claim brought by a father alleging his constitutional rights were violated when county social workers removed his children from his physical custody on an emergency basis without notice or hearing and arranged for them to be transported out of state, the court observed:

> It is clear that a parent has a constitutionally protected interest in the custody and care of his or her children . . . However, it is also clear that this interest is not absolute. In an emergency situation, a state agency may remove children from their parents' custody when the children are subject to immediate or apparent danger or harm. . . . This case does not present a situation in which social workers interfered with the parent-child relationship in the absence of any perceived emergency.

*Caldwell v. LeFaver*, 928 F.2d 331, 333 (9th Cir. 1991). Similarly, in this case, a reasonable fact finder could not conclude that there was an unwarranted interference with Clarke's parental liberty interest. Clarke argues that the County violated his rights by refusing to return his minor son to his custody while the dependency proceedings were pending. Clarke contends DSS failed to make a finding of exigent circumstances to justify removal of the minor child from his custody. However, during that time, the minor was placed in the temporary care of CPS by court order. DSS had no authority to unilaterally place the minor child with Clarke while the dependency proceedings were ongoing.

Clarke further argues that if Upton had informed County counsel of the alleged exculpatory evidence in her possession, the County would not have supported the petition for modification filed by the minor's attorney, and the judge would have made a different finding. This allegation is too speculative to support a claim for unwarranted interference. Clarke has failed to cite any facts from which a reasonable fact finder could conclude that Upton withheld exculpatory evidence, intentionally or otherwise. Because Clarke has failed to satisfy his burden

to show by way of opposing evidence that a material fact exists with respect to unwarranted interference with his parental rights, Defendants are entitled to summary judgment.

### 2. Absolute Immunity

Defendants also contend Upton is entitled to absolute immunity from liability under Section 1983. The Ninth Circuit has held that social workers are entitled to absolute immunity only "in performing quasi-prosecutorial functions connected with the initiation and pursuit of child dependency proceedings." *Meyers v. Contra Costa County Dept. of Social Services*, 812 F.2d 1154, 1156 (9th Cir. 1987). "The presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties." *Mabe v. San Bernardino County, Dept. of Public Social Services*, 237 F.3d 1101, 1106 (9th Cir. 2001). Defendants cite *Mabe* for the proposition that social workers are entitled to absolute immunity even when they are accused of improper investigations and submitting false evidence, including alleged perjury. But in *Mabe*, the Ninth Circuit affirmed summary judgment in favor of the defendant social worker not on immunity grounds, but because there was no evidence of false or perjured testimony. *See Mabe*, 237 F.3d at 1109. To the contrary, the Ninth Circuit has held that social workers "are not entitled to absolute immunity from claims that they fabricated evidence during an investigation or made false statements in a dependency petition that they signed under penalty of perjury." *Beltran v. Santa Clara County*, 514 F.3d 906, 908-09 (9th Cir. 2008).

Like the defendant in *Mabe*, Upton is not entitled to absolute immunity to the extent Clarke claims she intentionally withheld evidence or submitted false evidence. However, there is no evidence of withheld or falsified evidence. To the extent Clarke suggests that Upton should be liable for failing to investigate or initiate proceedings based upon his allegations that abuse occurred after the minor was declared a dependent, the court finds that her election not to initiate court proceedings is a quasi-prosecutorial function that is protected by absolute immunity.

19

### 3.      Qualified Immunity

Defendants also contend Upton is entitled to qualified immunity for her actions.  To determine whether qualified immunity applies, the threshold question is whether, in the light most favorable to the party asserting injury, the facts show an officer's conduct violated a constitutional right.  *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001); *Robinson v. Solano County,* 278 F.3d 1007, 1012 (9th Cir.2002) (en banc). If no constitutional right was violated, immunity attaches and the inquiry ends. *Saucier,* 533 U.S. at 201. If a constitutional right would have been violated were a plaintiff's allegations established, the next step is to ask whether the right was clearly established in light of the context of the case. *Id.*  Finally, the contours of the right must be clear enough that a reasonable officer would understand whether his or her acts violate that right.  *Id.* at 202.

The court has conducted an analysis of Clarke's Fourteenth Amendment claims against Upton and Williams and has concluded that there was no constitutional violation. Upton and Williams are therefore entitled to qualified immunity as to the First and Second Causes of Action.

### B.      Violation of 42 U.S.C. § 1985 for Conspiracy to Deprive Clarke of Equal Protection Motivated by Racial and/or Gender Bias

To establish a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must prove: (1) a conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person of equal protection of the law, or of equal privileges and immunities under the law, (3) an act in furtherance of the conspiracy, and (4) that the plaintiff was injured in his person or property, or that the plaintiff was deprived of any right or privilege of a citizen of the United States.  *Sever v. Alaska Pulp Corp.,* 978 F.2d 1529, 1536 (9th Cir.1992).  The plaintiff must also prove that the deprivation of a protected right was motivated by some racial, or otherwise class-based, invidious

discriminatory animus. *Id.* Finally, allegations of a conspiracy must be supported by specific

factual allegations to establish a claim. *See Karim–Panahi v. Los Angeles Police Department,*

839 F.2d 621, 626 (9th Cir.1988).

"The absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy

claim predicated on the same allegations." *Thornton v. City of St. Helens,* 425 F.3d 1158, 1168

(9th Cir.2005) (internal quotation marks omitted). Thus, Clarke's Section 1985 claim cannot

survive summary judgment because he cannot sustain a Section 1983 claim based on the same

facts. *Id.* Accordingly, Defendants are entitled to summary judgment as to the Fifth Cause of

Action.

### C.   Violation of 42 U.S.C. § 1986 for Failure to Prevent § 1985 Conspiracy

Clarke claims all Defendants violated 42 U.S.C. § 1986 by failing to prevent a Section

1985 violation. Section 1986 holds liable "[e]very person who, having knowledge that any of the

wrongs conspired to be done, and mentioned in section 1985 ... are about to be committed, and

having power to prevent or aid in preventing the commission of the same, neglects or refuses to

do so, if such wrongful act is committed . . . ." 42 U.S.C. § 1986. A Section 1986 plaintiff must

show the existence of a Section 1985 conspiracy. *See Clark v. Clabaugh*, 20 F.3d 1290, 1295-96

(3d Cir. 1994); *Thompson v. Apache County*, No. CV 10-8009-PCT-DGC, 2011 WL 5547981, *

7 (D. Ariz. Nov. 15, 2011). As discussed in the previous section, the court does not find that

Clarke can establish the conspiracy element of a Section 1985 claim. Because Clarke has not

met his burden of establishing the conspiracy between any of the Defendants, no Defendant

cannot be held liable for failing to prevent the alleged conspiracy.

### D.   *Monell* Claim

While a municipality is considered a "person" under 42 U.S.C. § 1983, a municipality

"cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under [42 U.S.C. § 1983] under a *respondeat superior* theory." *Monell v. Department of Soc. Servs.,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *Long v. County of Los Angeles,* 442 F.3d 1178, 1185 (9th Cir.2006). Liability only attaches where the municipality itself causes the constitutional violation through "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell,* 436 U.S. at 694. "If no constitutional violation occurred, the municipality cannot be held liable." *Long,* 511 F.3d at 907 (citing *City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986)); *see Gregory v. County of Maui,* 523 F.3d 1103, 1109 (9th Cir.2008). If a constitutional violation has occurred, municipal liability may be premised on: (1) conduct pursuant to an expressly adopted official policy; (2) a longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity; (3) a decision of a decision-making official who was, as a matter of state law, a final policymaking authority whose edicts or acts may fairly be said to represent official policy in the area of decision; or (4) an official with final policymaking authority either delegating that authority to, or ratifying the decision of, a subordinate. *See Price v. Sery,* 513 F.3d 962, 966 (9th Cir.Or.2008); *Lytle v. Carl,* 382 F.3d 978, 982 (9th Cir.2004); *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir.1995).

A plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. *See Bryan County Commn'rs v. Brown*, 520 U.S. 397, 404, 117 S. Ct. 1382, 1388 (1997). A single incident of unconstitutional activity is generally not sufficient to impose liability under *Monell*, unless there is proof that it was caused by an existing, unconstitutional municipal policy that can be attributed to a municipal policymaker. *See*

*Oklahoma City v. Tuttle*, 471 U.S. 808, 823, 105 S. Ct. 2427, 2436 (1985).

Because the Court concludes that no constitutional violation occurred, summary judgment on the Seventh Cause of Action against the County is appropriate.

### E.    State Law Tort Claims

In addition to the federal civil rights claims, Plaintiff's Third and Fourth Causes of Action allege state law tort claims for intentional infliction of emotional distress and negligent infliction of emotional distress against all Defendants.

### 1.    Intentional Infliction of Emotional Distress

Under California law, in order to make out a prima facie case for the tort of intentional infliction of emotional distress, a Plaintiff must show "(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Davidson v. City of Westminster*, 32 Cal.3d 197, 209 (Cal.1982)**.**  To satisfy the first element, the conduct alleged must be "so extreme as to exceed all bounds of that usually tolerated in a civilized community." *Id.* at 209.

The California Government Tort Claims Act provides that a public entity is not liable for any injury except as provided by statute. *See* Cal. Gov. Code § 815.  A public entity's potential liability generally arises from two sources: "1) the public entities' liability based on their own conduct and legal obligations, and (2) the public entities' liability, based on respondeat superior principles, for the misconduct of their employees that occurred in the scope of their employment." *Zelig v. County of Los Angeles*, 27 Cal.4th 1112, 1127-28 (Cal. 2002); *see also* Cal. Gov. Code §§ 815.2, 815.6.

Clarke bases his intentional infliction of emotional distress claim on an allegation that Defendants Upton and Williams "caused the protracted Dependency and the continued and prolonged denial of custody of Plaintiff's minor child" and "treated Plaintiff with animosity and indifference, and retaliated against Plaintiff for asking the 'DSS' to have Upton removed." Pl.'s Opp'n at 28.   Clarke alleges he was "shocked and seriously emotionally distressed at the loss of his minor child's custody and the stigma placed upon Plaintiff by Defendant's false reports." *Id.* Clarke alleges the County ratified Upton and Williams' conduct.  As noted above, Clarke has failed to introduce evidence in support of these claims. Because Clarke cannot succeed on a claim for intentional infliction of emotion distress against the individual defendants, there is no basis for the County's liability based on respondeat superior.  The court thus grants summary judgment in favor of Defendants on the Third Cause of Action.

**2.      Negligent Infliction of Emotional Distress**

California law provides that a plaintiff may assert a cause of action for the negligent infliction of emotional distress upon the negligent breach of a duty owed to the plaintiff by the defendant. *See Burgess v. Superior Court*, 2 Cal. 4th 1064, 1073 (Cal. 1992).  In such cases the duty owed the plaintiff is one "that is 'assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of a relationship between the two." *Id.* (quoting *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal. 3d 583, 590, 770 P.2d 278 (Cal. 1989). Clarke alleges that the assignment of Upton and Williams to Clarke's minor child's dependency case created a duty requiring Upton and Williams to act lawfully and competently for the benefit of the parents and their minor child. *See* Pl.'s Opp'n at 28.  Upton acknowledges that she was assigned to provide family maintenance services to the parents and to ensure that they complied with the court ordered service plan. *See* Upton Decl. ¶ 12.

Defendants argue that a social worker acting as a case manager following a dependency

determination by a juvenile court cannot owe a duty of care to the parent of a dependent child. Defendants argue this would be "unworkable" because the social worker's primary duty is to the child.  There does not appear to be any case law establishing such a duty, however, there is some merit to Clarke's argument that a social worker assigned to provide family maintenance services owes a duty to care to each member of the family, including the parents.  Nevertheless, there is no evidence that Upton or Williams breached such a duty, if in fact one existed.  Defendants are therefore entitled to summary judgment on the Fourth Cause of Action.

### CONCLUSION AND ORDER

Accordingly, IT IS HEREBY ORDERED that:

1.      Defendants' motion for summary judgment is GRANTED.

2.      The Clerk shall CLOSE this case.

**IT IS SO ORDERED.**


**Dated:   September 25, 2012**

_____

**CHIEF UNITED STATES DISTRICT JUDGE**